**STATE LIFE INS. CO. v. LIDDELL et al.**

No. 25359.  Oct. 20, 1936.

Rehearing Denied Nov. 10, 1936.

J. Woody Dixon and Snyder, Owen & Lybrand, for plaintiff in error.

C. C. Wilkins, for defendants in error.

PER CURIAM. The parties will be referred to herein as they appeared in the trial court. The plaintiff, the State Life Insurance Company, brought suit to foreclose a real estate mortgage against the defendant Minnie Liddell and others. Minnie Liddell is a Chickasaw Indian and the land covered by the mortgage is her homestead. After service of summons on her she engaged a lawyer who entered a special ap-

pearance and filed a motion to quash the summons. He appeared in court several times and obtained a postponement of the hearing on the motion. It was finally overruled, and the attorney apparently either withdrew or abandoned the case. Later, a default judgment was entered and decree of foreclosure rendered. At a subsequent term of court, the defendant Minnie Liddell filed a petition to vacate the judgment on the grounds stated in the seventh paragraph of section 5560, O. S. 1931, "for unavoidable casualty or misfortune preventing the party from prosecuting or defending." Later, an amendment to the petition was filed, setting up as an additional ground for vacating the judgment, "for fraud practiced by the successful party in obtaining the judgment or order," under the fourth paragraph of the same section of the statute.

After a hearing in which a great deal of evidence was introduced by both parties, the trial court vacated the judgment and gave the defendant Minnie Liddell 30 days to file an answer. From the order of court vacating the judgment, the plaintiff prosecutes this appeal. In order to avoid repetition the various assignments of error will be stated as they are discussed in the opinion.

Plaintiff contends that the court erred in permitting the amended petition to vacate the judgment to be amended by adding a verification. The attention of the court was not called to the fact that the amended petition was not verified until both parties had completed their evidence and rested. Whereupon the defendant asked leave to amend the petition by adding the verification, which leave was granted by the court. This was not an abuse of discretion on the part of the court.

"The allowance of amendments to pleadings, before or after judgment, when they do not change substantially the claim or defense, rests in the sound discretion of the court." Alcorn v. Dennis, 25 Okla. 135, 105 P. 1012; City of Shawnee v. Slankard, 29 Okla. 133, 116 P. 803; Herron v. M. Rumley' Co., 29 Okla. 317, 116 P. 952; Trower v. Roberts, 30 Okla. 215, 120 P. 617; Offutt v. Wagoner, 30 Okla. 458, 120 P. 1018; Merchants' & Planters' Ins. Co. v. Crane, 36 Okla. 160, 128 P. 260; Shawnee-Tecumseh Traction Co. v. Wollard, 54 Okla. 432, 153 P. 1189.

Plaintiff assigns as error the overruling of its demurrer to the petition and amended petition. The original petition is based on the seventh ground of section 556, O. S. 1931, "for unavoidable casualty or misfortune preventing the party from prosecuting

or defending." The amendment to the petition was based on the fourth ground of the same section, "for fraud, practiced by the successful party, in obtaining the judgment or order." Without setting out the petition fully, the material allegations as to unavoidable casualty or misfortune preventing the defendant from defending were that the suit was an action on a promissory note and for the foreclosure of a mortgage securing the same on the plaintiff's homestead. This defendant alleges that the land described in the plaintiff's petition and alleged by the plaintiff to secure the note sued upon herein by the plaintiff was allotted to this defendant by the United States government, and that said land at the time this suit was filed, and many years prior thereto, belonged to this defendant, and that said land at this time belongs to this defendant. That about the time the suit was filed, Luther Smith informed this defendant that the suit had been filed upon her land, and that he wanted the suit delayed as long as possible in order that he could get the oil play from an oil and gas lease upon said land, and that he had arranged with a certain law firm to represent her in this case, and that this defendant went to see said attorney of the law firm about this case, and that said attorney filed a motion to quash the service of summons for this defendant, and that thereafter, and on the 11th day of July, 1931, said motion was overruled· and this defendant allowed 20 days in which to answer; that said attorney, without the knowledge and consent of this defendant, apparently withdrew from this case, and failed to plead further for this defendant, and failed to file an answer and set up the defense of this defendant, all of which was unknown to this defendant; that this defendant depended upon the statement of said attorney that he would look after the case for her and expected him to look after the case and represent her further, and was depending upon him to represent her and did not know that he was representing Luther Smith in the case, and that he apparently withdrew and permitted a default judgment to be entered against this defendant.

This defendant shows to the court that she has a good and valid defense to this cause of action and was prevented from interposing her defense to her cause of action by reason of the misfortune of her attorney withdrawing from the case and permitting a default judgment to be entered against her without any knowledge or fault upon her part. The defendant further

pleaded that the note and mortgage sued upon were not signed by her and that the signatures were forgeries.

The amended petition adds the additional ground for fraud practiced by the plaintiff in obtaining the judgment; the allegations of the said petition alleging:

"Said fraud being that the plaintiff represented to this court that this defendant signed the note and mortgage upon which the plaintiff obtained the judgment, and that said representations by this plaintiff to this court were false and untrue, and that in truth and fact this defendant did not sign said note and mortgage sued upon herein, and that if her signature is attached to said note and mortgage the same is forgery."

Under the well-known rule that for the purpose of the demurrer the allegations of the petition are taken as true, we think the allegations of the petition and amended petition are sufficient to state a cause of action. The effect of the demurrer being to admit that the defendant was prevented from making a defense by the withdrawal of her attorney from the case without notice to her, and that the judgment was obtained by fraud upon a forged note and mortgage, and that she had a good defense to the foreclosure suit, which she pleaded in her petition, it was not error for the court to overrule the demurrer.

Plaintiff assigns as error the order of the court vacating the judgment and granting the defendant 30 days to file an answer.

There was a decided conflict in the evidence. The testimony and exhibits cover nearly 200 pages of the record, and it would serve no useful purpose and extend this opinion to undue length to set out even the material portions of the evidence fully. The following brief statement indicates the character of the testimony: Minnie Liddell testified that she first learned about the mortgage on the land in 1930; that after the summons was served on her, she went to see an attorney, and he told her that he would see to it. The evidence shows that the attorney entered a special appearance and filed a motion to quash the summons and appeared two or three times in court and had the hearing on the motion continued, and it was finally overruled by the court. The attorney made no further appearance in the case. That Mrs. Liddell had no notice that her attorney abandoned the case.

Mrs. Liddell denied that the signatures to the application for a loan, the note and mortgage, were her signatures. There was evidence tending to show that she did not receive any of the proceeds of the loan; that the indorsement of her name on the check issued by the loan company was forged, and the proceeds deposited in a bank and checked out by D. V. Liddell, her husband; that all of the interest payments on the loan were made by her husband until June, 1929, when he was sent to the federal penitentiary at Atlanta, Ga., to serve a sentence, and was away until the loan matured in January, 1930. Mrs. Liddell did not know of the forgery until he came back from the penitentiary. D. V. Liddell testified that he paid one Jim London $50 to forge Mrs. Minnie Liddell's signature to the various instruments. Jim London at the time of the hearing was serving a term in the penitentiary at McAlester. His deposition was taken and he denied that he had committed the forgeries.

The notary public, whose certificate of acknowledgment appears on the mortgage, testified he had no recollection of taking the acknowledgment and had no record of it. He was shown the original mortgage and the following question was asked: "You state if that is your signature." Answer: "I don't think I ever wrote my signature like that." That he did not remember ever taking Minnie Liddell's acknowledgment at all; that he was in partnership at that time with Jim London in the farm loan business.

The original instruments were before the court, together with signatures admitted to be genuine. The court found:

"The instruments themselves show conclusively that Minnie Liddell certainly never signed the notes or mortgage and therefore are forged and a fraud on her. * * * Minnie Liddell is not illiterate as to ability to read and write, but as to business certainly a very ignorant timid Indian woman presided over by a strong dominating and criminal husband, who, in order to receive money for himself, forges his wife's name with impunity and takes advantage of the loan company in doing so."

In proceedings of this character, each case must depend on the facts of the particular case.

We quote the first paragraphs of the syllabus in Standard v. Fisher, 169 Okla. 18, 35 P. (2d) 878:

"Default judgments are never viewed with favor. Litigated questions should be tried on their merits. Lovejoy v. Stutsman, 46 Okla. 122, 148 P. 175; Lott v. Kansas-Osage Gas Co., 139 Okla. 6, 281 P. 297.

"An application to set aside the default

judgment which has been filed after the term at which the judgment is rendered is addressed to the sound legal discretion of the trial court, and each case to a marked degree must depend upon its own facts and circumstances. In such case the granting or refusal to grant relief is largely a matter of discretion on the part of the trial court, which discretion seldom will be interfered with on appeal, but that discretion should always be exercised to promote the ends of justice."

The facts in the case at bar are similar to the facts in Morrell v. Morrell, 149 Okla. 187, 299 P. 866. The following quotation from the opinion shows the similarity:

"The defendant is a woman of three-quarters Cherokee Indian blood without experience in court proceedings up to the time this action was commenced. She was sued by her sister-in-law; she asserts she did not convert the automobile and prays that she be permitted to file answer to the petition filed by the plaintiff and to litigate this case on its merits. Defendant offers to pay the costs accrued in the action and to conform to any other reasonable order that the trial court may make in that behalf.

"The court made an order that she pay all costs, including the cost of the proceedings to vacate the default judgment, and that she execute a good and sufficient bond in the sum of $4,000, conditioned that she will perform any judgment rendered against her.

"Her attorneys owed her the duty to advise her when the case was set for trial, and she relied upon them to perform that duty, and she was not guilty of negligence. If her attorneys understood they had been discharged, it was their duty to inform their client when they knew the case was set for hearing, or, at least, to make a diligent effort to so advise her, and also to inform the court and have their names stricken as her counsel of record, and no doubt the court would then have directed the court clerk to notify the defendant that the cause was set for trial and that her attorneys had withdrawn from the case."

In McLaughlin v. Nettleton, 69 Okla. 74, 183 P. 416, this court said:

"The unquestionable weight of authority is that when an attorney has been employed to conduct legal proceedings, he undertakes to conduct them to their determination and cannot abandon the services of his clients without cause and without reasonable notice.

"The evidence in this case shows that there was no notice given plaintiffs that their local counsel intended to abandon the cause, or terminate his services, or that he had done so, and while we are loath to disturb this verdict on account of the fact that this is the second proceeding of this kind in this cause, nevertheless we are constrained to believe that if this judgment should stand, it would have the effect of denying litigants their day in court and arouse an unjust resentment against the approved procedure in our tribunals of justice. It is the policy of the law and courts of Oklahoma to allow each litigant the right to be heard upon the merits of his cause free from technical pitfalls."

McLaughlin v. Nettleton, supra, has been cited with approval and followed in Anderson v. Graham, 87 Okla. 278, 210 P. 281. See, also Bearman v. Bracken, 112 Okla. 237, 240 P. 713, and Tippins v. Turben, 162 Okla. 136, 19 P. (2d) 605.

We have carefully examined the cases cited by counsel for plaintiff in their brief. In each of the Oklahoma decisions cited, the trial court denied the application to vacate the judgment, and in each instance this court refused to interfere with the judgment of the trial court.

It is true that it is the rule in this jurisdiction that false evidence or perjury alone, relative to an issue tried, is not sufficient ground for vacating or setting aside a judgment; the fraud which will authorize the court to vacate a judgment must be extrinsic or collateral to the issues tried in the cause wherein the judgment was rendered; it must be such fraud as to prevent the other from having a trial of the issues. Marshall v. Marshall, 7 Okla. 240, 54 P. 461; Burton v. Swanson, 142 Okla. 134, 285 P. 839; Cherry v. Gamble, 101 Okla. 234, 224 P. 960.

The application was not based on the ground of fraud practiced by the successful party in obtaining the judgment, alone. The defendant pleaded two grounds for the vacation of the judgment, either one of which was sufficient, if supported by evidence, to sustain the action of the trial court in granting the relief prayed for.

The uniform rule that has been followed by this court is that a petition to vacate a judgment is addressed to the sound legal discretion of the trial court, and his decision either vacating or refusing to vacate a judgment will not be disturbed unless abuse of such discretion clearly appears, and in order to warrant a reversal of an order vacating a judgment a much stronger showing of abuse of discretion must be made than where a vacation of judgment is denied.

The evidence of unavoidable casualty or misfortune preventing the defendant from defending was sufficient under the rule laid

down in Morrell v. Morrell, supra, and there is no such clear showing of an abuse of discretion as to warrant a reversal. The order vacating the judgment and granting defendant 30 days to file an answer is affirmed.

The Supreme Court acknowledges the aid of Attorneys A. L. Zinser, Eugene S. Champlin, and C. F. Dyer in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Zinser, and approved by Mr. Champlin and Mr. Dyer, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.