2003 OK CIV APP 78

**WASHINGTON MUTUAL BANK FA, successor by merger to Bank United, Plaintiff/Appellee,**

v.

**FARHAT ENTERPRISES, INC., an Oklahoma corporation and Mumtaz H. Abbasi, individually, and Amna Paryani, Defendants/Appellants.**

No. 97,364.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 22, 2003.

Mitchell D. Blackburn, Conner & Winters, P.C., Oklahoma City, OK, for Plaintiff/Appellee.

Jon Epstein, Susanna G. Voegeli, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, OK, for Defendants/Appellants.

Opinion by BAY MITCHELL, Presiding Judge.

¶ 1 Plaintiff/Appellee Washington Mutual Bank FA ("WMB"), successor by merger to Bank United, loaned $1,265,000 to Defendant/Appellant Farhat Enterprises, Inc. ("Farhat") in April 2000, for the purchase of two convenience stores. As part of the transaction, the parties executed a note, mortgage, and security agreement with power of sale. Defendants/Appellants Mumtaz H. Abbasi and Amna Paryani personally guaranteed payment of the debt. After Appellants defaulted on the note and guarantees, WMB purchased the property for $540,000 pursuant to the terms of the power of sale.

¶ 2 On June 7, 2001, WMB filed a petition seeking a deficiency judgment against Farhat alleging it defaulted on its promissory note, and against Abbasi and Paryani alleging they defaulted on their guarantees to pay the debt. On June 11, 2001, the petition and summonses arrived by certified mail, return receipt requested, at Paryani's accounting

firm in Irving, Texas. WMB did not restrict delivery to the addressees as required by law. Paryani and Abbasi do not reside at Paryani's accounting firm, and it is neither Farhat's registered office nor its principal place of business. At the time of the June delivery, Paryani was not at her office but in Pakistan, where she remained throughout the summer. The receptionist/secretary at Paryani's office, who is not a Farhat employee, signed each of the three return receipts.[1] Counsel for WMB mailed courtesy copies of the petition and summonses to Appellants' attorney in Dallas, Texas.[2]

¶ 3 After the July 2, 2001, answer deadline passed without Appellants having filed a response, the trial court entered default judgment against Appellants on July 13, 2001, in the amount of $821,262.32 plus interest. Appellants were not aware of the action against them until sometime after the trial court entered the default judgment.

¶ 4 On August 6, 2001, Appellants' first Oklahoma counsel[3] entered an appearance and simultaneously filed a "Motion to Set Aside Judgment and Request for Time to Plead or Answer." In this one-sentence motion, filed without supporting brief, Appellants requested the trial court set aside the default judgment pursuant to 12 Okla. Stat. 2001 § 1031.1 and grant them twenty days to plead or answer. In their motion to set aside, Appellants did not allege defective service of process or lack of personal jurisdiction, nor did they assert any defenses to the

action, not even a general denial, nor advance any counter-claims against WMB.[4]

¶ 5 At a September 14, 2001 hearing on the motion, at which the parties appeared through their respective attorneys, Appellants' counsel stated that although he personally had neither spoken to nor had any contact with either Paryani or Abbasi, Appellants' Dallas counsel had informed him they were out of the country on an emergency basis due to family problems, unable to assist counsel, and that this was the reason they had failed to respond to the petition. Appellants' counsel maintained that his lack of personal knowledge as to Paryani's and Abbasi's whereabouts prevented him from including such information in the motion to set aside judgment. He further argued while vacating the default judgment and allowing Appellants their day in court would not result in serious injustice to WMB, leaving the $821,262.32 award in place would mean certain financial ruin for Appellants. The trial court declined to vacate the default judgment nonetheless, concluding Appellants had failed to show sufficient cause to disturb it.

¶ 6 On October 3, 2001, Appellants filed a motion for new trial under 12 O.S. § 651(1), (8), and (9), in which they directly alleged for the first time the default judgment was void due to improper service and lack of personal jurisdiction. Appellants further stated Paryani had returned from Pakistan and all Appellants were ready to defend the lawsuit and assert valid defenses thereto.[5] In response,

---

1. The trial court's docket notes that the signature is illegible on each of the three certified return receipts and does not indicate WMB restricted delivery to the addressees.

2. Appellants' Dallas counsel, Dean A. Mason, represented Appellants in negotiating the underlying transaction with WMB.

3. After later filing a motion for new trial, Stephen A. Zrenda, Jr. moved to withdraw as Appellants' counsel of record on November 1, 2001, which motion the trial court granted on November 5, 2001. Current counsel for Appellants entered an appearance shortly thereafter, and filed Appellants' reply brief in support of their motion for new trial.

4. The full text of the motion is as follows:
 Comes now Stephen A. Zrenda, Jr. and requests this Court set aside the Judgment entered in this case on July 13, 2001, consistent with 12 O.S. § 1031.1B, and requests twenty (20) days to plead or answer the Petition filed by the Plaintiff herein for the reason that Stephen A Zrenda, Jr. has recently been retained to represent the Defendants Farhat Enterprises, Inc., Mumtaz H. Abbasi and Amna Paryani.

5. To their motion for new trial, Appellants attached a copy of the Second Amended Petition that they, along with over fifty other plaintiffs, filed against WMB and other defendants on September 25, 2001, in Dallas County, Texas. The petition alleges defendants engaged in a series of fraudulent schemes involving gas station and convenience store real estate transactions under the Small Business Administration Guaranteed Loan Program. The petition charges defendants with fraudulent misrepresentation and concealment, statutory fraud, negligent misrepresentation, negligence, unjust enrichment, self-dealing,

WMB argued that through the entry of appearance by Appellants' counsel, their motion to set aside judgment, and Appellants' appearance (via their attorney) at the September 14th hearing on that motion, Appellants had made a general appearance and thus waived any purported defects in service. On January 17, 2002, after a hearing and a supplemental briefing cycle, the trial court denied Appellants' motion for new trial. This appeal of the trial court's denial of Appellants' motions to set aside judgment and for new trial ensued.

 ¶ 7 We review for abuse of discretion a trial court's refusal to grant both a motion to vacate default judgment and a motion for new trial. *Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc.,* 2000 OK 78, ¶ 5, 13 P.3d 480, 482; *Mooney v. Mooney,* 2003 OK 51, ¶ 50, 70 P.3d 872, 881. "What constitutes abuse of discretion on the part of the trial court in refusing to set aside a default judgment is dependent upon the facts and circumstances surrounding each individual case." *Wade v. Padberg,* 1955 OK 116, ¶ 7, 283 P.2d 201, 203, *citing Shuler v. Viger,* 1924 OK 647, 229 P. 280. Because it is the policy of the law to afford every party to an action a fair opportunity to present his side of a cause, a much stronger showing of abuse of discretion must be made where a judgment has been set aside than where it has been refused, as is the case at bar. *Midkiff v. Luckey,* 1966 OK 49, ¶¶ 7–9, 412 P.2d 175, 177 (affirming trial court's order vacating default judgment where defendant misplaced or lost the summons and was unaware of judgment until contacted by plaintiff's attorney one month later). The trial court should always exercise its discretion so as to promote the ends of justice. *Id.,* ¶ 6, 412 P.2d at 176, *citing State Life Ins. Co. v. Liddell,* 1936 OK 662, 61 P.2d 1075; *see also Ferguson,* ¶ 5, 13 P.3d at 482. In addition, the trial court must consider "whether substantial hardship would result from granting or refusing to grant the motion to vacate." *Ferguson,* ¶ 5, 13 P.3d at 482.

 ¶ 8 In *Bailey v. Campbell,* 1991 OK 67, 862 P.2d 461, the Supreme Court held:

breach of fiduciary duty, civil conspiracy, and

Notice is a jurisdictional requirement and a fundamental element of due process. Due process requires adequate notice, a realistic opportunity to appear and the right to participate in a meaningful manner. The right to be heard is of little value unless a party is apprised of rights which may be affected by judicial process. Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise interested parties of the pendency of an action. Lack of notice constitutes a judicial infirmity.

*Id.,* ¶ 16, 862 P.2d at 469; *see also Nelson v. Nelson,* 1998 OK 10, ¶ 21, 954 P.2d 1219, 1227. "Because litigants are entitled to a fair day in court, policy encourages actions being tried on the merits. Default judgments are not favored." *Nelson,* ¶ 23, 954 P.2d at 1228; *see also Girkin v. Cook,* 1973 OK 118, ¶ 17, 518 P.2d 45, 49; *Singleton v. LePak,* 1967 OK 37, ¶ 10, 425 P.2d 974, 977; *Cox v. Williams,* 1954 OK 269, ¶ 6, 275 P.2d 248, 249.

 ¶ 9 We must first consider whether WMB's attempted service on the three Appellants was defective. "Service by mail shall be accomplished by mailing a copy of the summons and petition by certified mail, return receipt requested *and delivery restricted to the addressee.*" 12 Okla. Stat.2001 § 2004(C)(2)(b) (emphasis added). "[T]he Oklahoma Pleading Code requires substantial compliance in order for the trial court to have jurisdiction over the person of the defendant." *See Graff,* ¶ 20, 814 P.2d at 495. Accordingly, service by mail shall not be the basis for the entry of a default judgment unless the record contains a return receipt showing acceptance or refusal *by the defendant.* 12 Okla. Stat.2001 § 2004(C)(2)(c) (emphasis added).

¶ 10 In the case of a domestic corporation such as Farhat, acceptance "by any officer or by any employee of the registered office or principal place of business who is authorized to or who regularly receives certified mail" constitutes acceptance by the party addressed. 12 Okla. Stat.2001 § 2004(C)(2)(c). Although "[a] return receipt signed at such registered office or principal place of busi-

gross negligence.

ness shall be presumed to have been signed by an employee authorized to receive certified mail," if a defendant demonstrates to the trial court that the person signed the return receipt was actually unauthorized, the trial court shall set aside any default judgment against it. *Id.*

¶ 11 It is undisputed that Paryani's accounting firm was not Farhat's principal place of business. The secretary/receptionist was not a Farhat employee, and thus not authorized to receive certified mail on behalf of Farhat. Given that neither Paryani nor Abbasi used Paryani's accounting firm as their "dwelling house or usual place of abode," WMB's focus on the fact that the receptionist/secretary was "an adult" is misplaced. 12 Okla. Stat.2001 § 2004(C)(2)(c); *see Graff*, ¶ 12, 814 P.2d at 493 (holding "[a] defendant's regular place of business is not the same as his dwelling house or usual place of residence" and that service of process by personal delivery to the receptionist of defendant's place of business was wholly insufficient to confer jurisdiction over the defendant). Moreover, WMB failed to restrict delivery to the addressees as expressly required by § 2004(C)(2)(b), and neither Paryani nor Abbasi were present at the office to sign for the delivery personally. Service of process was thus defective as to each of the three Appellants. As a result, the trial court did not have personal jurisdiction over any of the three Appellants when it entered the default judgment against them.

¶ 12 The question thus becomes whether the entry of appearance by Appellants' counsel, Appellants' motion to set aside, and their attorney's attendance at the September 14, 2001 hearing on that motion, operated to waive lack of personal jurisdiction as a defense and validate the default judgment against them. It is well settled that assertion of nonjurisdictional as well as jurisdictional grounds in a motion to vacate judgment constitutes a general appearance and a waiver of defects in the judgment relating to jurisdiction over the person of defendant. *La Bellman v. Gleason & Sanders*, 1966 OK 183, ¶ 9, 418 P.2d 949, 953; *Gaghagen v. Lehmer*, 1935 OK 66, ¶ 4, 40 P.2d 1046, 1047. "Notwithstanding this fact,

it is the duty of the court to investigate and ascertain whether or not the proceedings resulting in the judgment and the judgment itself are so irregular that they would be held to be fatal upon appeal direct from the judgment, and that in case injustice has been done, and it is clear the judgment is inequitable, it should be vacated, to the end that the controversy may be heard upon the merits in the interest of justice." *Griffin v. Jones*, 1914 OK 615, 147 P. 1024, 1028.

¶ 13 Appellants' counsel entered an appearance on the day he filed the motion to set aside the entry of default judgment against Appellants, who had recently retained him. Appellants' counsel's appearance put the trial court on notice that the Appellants had not had legal representation in the case prior to its entry of default judgment against them. Rule 49 of the Rules of the Seventh Judicial District provides a party shall file "an entry of appearance by counsel no later than the first filing of any pleading or other paper in the case by that counsel or party.... Filing an entry of appearance as required by this Rule, does not waive any defenses enumerated in Title 12 O.S. Section 2012(B)," which defenses include lack of personal jurisdiction and insufficiency of service of process.

¶ 14 At the hearing on Appellants' motion to set aside judgment, which occurred three days after the terrorist attacks of September 11, 2001, Appellants' counsel set forth the grounds for the motion to set aside by informing the trial court he had not had personal contact with any of the Appellants and that his understanding from their Dallas attorney was that Paryani and Abbasi were in Pakistan due to a family emergency. Maintaining his lack of personal knowledge as to Paryani's and Abbasi's whereabouts prevented him from including such information in the motion to set aside judgment, Appellants' counsel asserted their absence from the country was the reason for their failure to respond to WMB's petition. He argued further that vacating the default judgment would not result in serious injustice to WMB, but leaving the $821,262.32 default judgment in place would mean certain financial ruin for Appellants. Counsel for Appellants did not

assert any nonjurisdictional defenses to the action at the hearing, nor did he advance any counter-claims against WMB.

¶ 15 We find the remarks of Appellants' counsel at the hearing, however inartful, were sufficient to put the trial court and WMB on notice that Appellants did not have timely notice of the suit, there were possible problems with service of process, and the trial court's *in personam* jurisdiction was in question. In any event, examination of the judgment roll reveals that the signature is illegible on each of the three certified return receipts. In addition, while it is noted in the trial court's docket that attempted service was made by certified mail, return receipt requested, there is nothing in the record to indicate delivery was restricted to the addressees as required by law, and it is undisputed WMB did not comply fully with § 2004(C)(2)(b) in that respect.

¶ 16 "If the record does not reflect that personal service has been made on the defendant, the court lacks *in personam* jurisdiction over the defendant and any default judgment rendered thereon is void and subject to vacation." *Ferguson,* ¶ 11, 13 P.3d at 483. "A void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby." 12 Okla. Stat.2001 § 1038. This provision applies when the invalidity appears on the face of the judgment roll, *i.e.,* when the record affirmatively shows that the trial court lacked personal jurisdiction. *Town of Watonga v. Crane Co.,* 1941 OK 39, ¶ 4, 114 P.2d 941, 942. The judgment roll or record includes the petition, process, and return, as well as pleadings, reports, verdicts, orders, and judgments. *Elliott v. City of Guthrie,* 1986 OK 59, ¶ 7 n. 8, 725 P.2d 861, 863 n. 8. Where the return of process reveals the appellant was not properly served, the trial court lacks *in personam* jurisdiction and the judgment is void on its face. *Graff v. Kelly,* 1991 OK 71, ¶ 21, 814 P.2d 489, 495–96. "When the judgment [roll] fails to disclose that a party was brought into court by process that is constitutionally due, the judgment rendered in the case is void on the face of the record proper. The judgment stands

subject to attack, direct or collateral, at any time." *Bailey,* ¶ 16, 862 P.2d at 470.

¶ 17 As the Supreme Court reasoned in *Griffin,* ¶ 5, 147 P. 1027–28:

It has been said that a judgment which is void for want of service is no judgment at all; and to hold that after a judgment in form only has been entered against a party, which in fact and in law is no judgment, by his appearance in an effort to relieve himself from such judgment which is apparently valid, but which in fact is void, is carrying the rule of estoppel and waiver to the extreme. Not only have defendants never had their day in court, but they have had no opportunity to have it, and without any fault on their part. *If they have done nothing to forfeit their constitutional rights of a hearing, the right to appear and defend, other than to waive the jurisdiction of the court over their person in an effort to secure their legal rights in an orderly manner, and if irregularities appear upon the face of the record affecting their substantial rights, what valid reason can be assigned why they should not now be allowed their day in court?* We are told that, although this judgment was void prior to the defendants' appearance, yet by appearing and on account of their indiscretion in challenging the judgment as inequitable, as well as on the grounds of jurisdiction of the court, they have waived all irregularities and errors, and are now estopped from raising any questions, other than jurisdictional; that it matters not how unjust and inequitable the judgment may be notwithstanding the trial court may have grossly misconceived its authority and duty, and by reason whereof prejudicial error is obvious, yet the court is not warranted in granting relief. We are unwilling to subscribe to this doctrine.

¶ 18 In *Haskell v. Cutler,* 1940 OK 485, 108 P.2d 146, the Supreme Court held:

It is the policy of the law to afford every party to an action a fair opportunity to present his side of a cause. Therefore, the approach to a consideration of the vacating of a default judgment must necessarily differ from the vacation of a judgment

where the parties have had at least one opportunity to present the case on its merits.

*Id.,* ¶ 8, 108 P.2d at 147 (citations omitted). "Our judicial system is based upon the fair and just theory that every party to a lawsuit is entitled to his day in court." *Id.,* ¶ 10, 108 P.2d at 148. "Litigants who, through gross neglect, bad faith, or fraud, fail to timely respond to proper summons, must usually suffer the full consequences of their default, although often gross neglect may be excused on terms when the injustice of the default judgment is excessively great." *Slyman v. State,* 1924 OK 572, 228 P. 979, 980.

> Where a defaulting defendant and his attorney have at all times proceeded in good faith and have exercised that degree of care and skill which reasonably prudent persons would ordinarily exercise under all the circumstances, and where ... the judgment debtor promptly and lawfully proceeds to vacate the same, the judgment will be set aside, not as an act of mercy, but as the recognition of a right granted by law and which no court has the right to arbitrarily deny. In determining whether it should vacate a default judgment, the court may, and often should, go further than required under this rule, but less than this it must not do.

*Id.,* 228 P. at 981.

> While it is true that diligence of litigants in attending to their matters pending in the courts is of importance and while it is a significant function of the courts that the litigation before them be determined and disposed of as rapidly as possible, it is also important that all litigants be given a reasonable opportunity to have their day in court. And this is particularly true when the litigant has acted with dispatch after the granting of a default.

*Singleton,* ¶ 10, 425 P.2d at 977–978. It is undisputed Appellants acted with dispatch to timely file their motion to set aside judgment. Through no fault of their own, given WMB's defective service, Appellants did not have an opportunity to present their case on the merits.

¶ 19 WMB argues that Appellants' motion to vacate nonetheless operated to waive the defenses of lack of *in personam* jurisdiction and failure of process through its request for an additional twenty days in which to plead and answer. Title 12 Okla. Stat.2001 § 2012(A) provides that by seeking to extend the time to respond by twenty days, a defendant waives multiple defenses, including lack of jurisdiction over the person and insufficiency of service of process. In making this argument, WMB ignores the fact that § 2012 is a rule of pre-trial procedure. Because the trial court had already entered default judgment against them, Appellants request for additional time to plead and answer was procedurally incorrect. At that point in the litigation, only post-trial motions were available to them.

¶ 20 We are mindful of the disfavor in which default judgments are held and the fact that a trial court always should exercise its discretion so as to promote the ends of justice. Moreover, the abuse of discretion threshold is significantly lower when, as here, a trial court has refused to set aside a default judgment. Appellants had no notice of the suit against them at the time the trial court entered default judgment and were denied their day in court. It is evident under the facts presented that the grant of Appellants' motion to set aside judgment would not cause substantial delay or harm to Appellees, but its denial would work a serious injustice to Appellants, particularly given the size of the judgment. We hold the trial court abused its discretion in denying Appellants' motion to set aside judgment. Because we make our decision based on Appellants' initial post-trial motion, we need not consider whether the trial court also erred in denying Appellants' motion for new trial. The cause is reversed and remanded and the trial court directed to set aside default judgment against Appellants and allow them sufficient time in which to plead and answer.

¶ 21 REVERSED AND REMANDED.

HANSEN, J., and JONES, J., concur.