**Bettye J. HEITMAN, Appellee,**

v.

**Tom BROWN, Appellant.**

**No. 86518.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 17, 1996.

Rehearing Denied in Part and Granted in Part Jan. 14, 1997.

Gary A. Taylor, Marilyn Staats, Christine Hamilton Beadle, Oklahoma City, for Appellant.

Warren L. Griffin, Debra A. Charles, Jeffrey S. Hart, Midwest City, for Appellee.

## OPINION

HANSEN, Presiding Judge:

Appellant, Tom Brown, and Appellee, Bettye Heitman, began cohabiting in 1976. At that time, they each owned separate properties. Tom owned a house on a two or two and one-half acre lot on N.W. 30th St. in Oklahoma City where the parties later lived together until that home burned down. He also owned real estate in Arkansas, and a house on N.W. 29th St. in Oklahoma City.

Bettye owned a house in Midwest City and was employed full-time with the Federal Aviation Administration in Oklahoma City. During their nineteen years together, Tom did not hold a salaried job, did not receive a paycheck, and did not file a tax return.

In 1980, Tom conveyed the 30th Street property to Bettye by warranty deed. She later obtained a construction loan secured by the property and sold her home in Midwest City. With these funds, she financed the construction of a prototype styrofoam home which Tom designed and built on the N.W. 30th Street lot. The parties lived in the styrofoam home, which was intended to be shown to prospective purchasers and to promote the sale of similar homes designed by Tom. However, the marketing of the styrofoam homes was unsuccessful.

During the time the parties cohabited, Bettye made all mortgage, insurance and tax payments on the property. She retired in 1989 and used her lump-sum retirement benefit to pay off the original mortgage on the property.

In 1994, the parties' relationship ended when Bettye left Tom. Tom was still living in the styrofoam home on N.W. 30th Street.

Bettye filed a forcible entry and detainer action. But when Tom claimed an interest in the real property, she amended her petition and asserted an ejectment action concerning the real property and a replevin action concerning personal property.

Tom filed a petition for divorce, claiming he and Bettye had a common law marriage. In the divorce petition, he requested an equitable division of their jointly acquired property. Bettye answered the divorce petition denying the existence of a common law marriage.[1]

The issue of whether a common law marriage existed was an issue in both the ejectment action and the divorce action. The trial court consolidated hearing on the two actions for the limited purpose of determining whether a common law marriage existed between the parties. On March 31, 1995, the parties presented testimony before Judge Dixon on this issue. The hearing was not completed, and was continued until May 12, 1995 at 1:30 p.m.

On May 12, 1995 at 1:30 p.m., Bettye and her counsel appeared. Because of confusion about the time set for the hearing, Tom and his counsel did not appear. No further testimony was taken. Bettye's counsel then moved for a default judgment on the issue of the existence of a common law marriage, which the trial court granted. In the September 22, 1995 journal entry memorializing the grant of the default judgment, the trial court found a common law marriage did not exist between the parties. Three days later, on May 15, 1995, Tom filed a motion to vacate the default judgment. The trial court overruled his motion to vacate.

A non-jury trial was held on Bettye's ejectment and replevin actions. The trial court granted her claim for replevin and ordered Tom to return to her certain personal property. The trial court also found Bettye had proved her claim for ejectment and found Tom had no interest in the real property and the styrofoam home. Tom appeals.

Among other things, Tom contends the trial court abused its discretion by refusing to vacate the default judgment, finding there was no common law marriage between him and Bettye. However, citing Rule 1.11 of the Rules of Appellate Procedure in Civil Cases, 12 O.S.1991 Ch. 15, App. 2,[2] Bettye argues

---

1. The ejectment action was assigned to Judge Dixon and the divorce action was assigned to Judge Jones.

2. Rule 1.11 provides that "an appeal from a district court may be commenced only by filing a petition in error within thirty (30) days of the date of judgment (including final orders or de-

Tom's appeal is not timely as to the order denying his motion to vacate default judgment.[3]

In *Reams v. Tulsa Cable Television, Inc.,* 604 P.2d 373 (Okla.1979), the issue was whether an appeal could be prosecuted from a "partial summary judgment."[4] In holding the appeal was subject to dismissal as prematurely brought, the Supreme Court found, "[t]he so-called 'partial summary judgment' does not fit our statutory definition of 'judgment.'" Judgment is the final determination of the rights of the parties in an action. 12 O.S.1991 § 681. Nor does it meet the definition of a "final order." 12 O.S.1991 § 953. The Court also held summary adjudication of less than all the issues in the action was beyond the reach of review because it did not fall into a class of interlocutory orders that are appealable by right. 12 O.S.1991 §§ 952(b)2 and 993.

The Court also stated that the term "partial summary judgment" is a misnomer. Rather, a better term for an order that serves to identify uncontroverted issues and separates them from those to be tried is "interlocutory summary adjudication."

■ Likewise, in the instant case, the "default judgment" does not fit the statutory definition of "judgment," does not meet the definition of a "final order," and does not fall into the class of interlocutory orders appealable by right. It is, instead, a pretrial adjudication of less than the entire cause.

Title 12 O.S.1996 § 994(A) provides:

When more than one claim for relief is presented in an action, whether as a claim, counter claim, cross-claim, or third-party claim, . . . the court may direct the preparation and filing of a final judgment, decree, or final order as to one or more but fewer than all of the claims . . . only upon the express determination that there is no just reason for delay and upon an express direction for the filing of a final judgment, decree, or final order. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . and the order or other form of decision is subject to revision at any time before the final judgment, decree or final order adjudicating all the claims . . . is filed with the court clerk.

At no time did Judge Dixon (assigned to the ejectment proceedings) nor Judge Jones (assigned to the divorce proceedings) make any order contemplated by § 994(A). Because there was an absence of an "express direction" for the filing of a final order, and the absence of an "express determination" there is no just reason for delay in perfecting an appeal of the decision refusing to vacate the default adjudication, that decision is not an appealable order. The appeal of the issue regarding the parties' alleged common law marriage was timely once all the issues surrounding the ejectment action were determined, by order filed October 16, 1995.[5]

Additionally, in *Jones v. Tubbs,* 860 P.2d 234 (Okla.1993), the trial court granted a default judgment to the plaintiff for his actual damages, but reserved the issue of punitive damages, attorney fees and costs. The defendant filed a motion to vacate the default judgment, which was overruled. The defendant appealed the denial of the motion to vacate. The Supreme Court dismissed the appeal, holding that failure to adjudicate all claims arising out of the same transaction prevented the default judgment from being

---

crees). The date of judgment shall be the date it was filed with the district court clerk."

**3.** The journal entry memorializing the order denying the motion to vacate the default judgment was filed October 2, 1995. Tom's petition in error was not filed until November 15, 1995.

**4.** In pertinent part, Rule 13, Rules for the District Court, provides:

". . . If the court finds that there is no substantial controversy as to certain facts or issues, it may make an order specifying the facts or issues which are not in controversy and direct that the action proceed for a determination of the facts or issues."

**5.** In an ejectment action, it is necessary that a plaintiff allege and prove: (1) his title; (2) his right of possession; and (3) wrongful possession of the defendant. *Murray v. Link Oil Company,* 353 P.2d 1111 (Okla.1960).

final. Therefore, the refusal to vacate that default judgment was not a final, appealable order. In the instant case, the order denying Tom's motion to vacate the default judgment was not a final appealable order. Tom timely appealed from the decision granting Bettye's ejectment claim. Thus, the decision of the trial court in its denial of the motion to vacate the default adjudication is properly before this Court.

■ Pursuant to 12 O.S.1991 § 1031.1, in deciding whether to grant a vacation within 30 days from judgment, the trial court has wide and extended discretion. *Jones v. Strain*, 603 P.2d 353 (Okla.App.1979). "That discretion should always be exercised to promote the ends of justice." Moreover, a lesser showing of abuse of discretion is required where a trial court refuses to vacate a default judgment than where a trial court grants a motion to vacate. *Midkiff v. Luckey*, 412 P.2d 175 (Okla.1966).

■ In the instant case, the hearing on the common law marriage issue was held on March 31, 1995. The second day of the hearing was continued until May 12, 1995 at 1:30 p.m. Tom's counsel mis-docketed the date as May 18th at 1:30 p.m. Bettye's counsel phoned Tom's counsel's office, but she was at lunch. When she arrived at the office at 1:40 p.m., her receptionist told her a judge was looking for her. By the time she ascertained which judge was looking for her, and by the time she arrived at Judge Dixon's chambers, it was 2:35 p.m. The judge then informed her he had granted default judgment against Tom. Tom's counsel filed a motion to vacate on the next working day, which the trial court denied. Tom was not allowed to present evidence on the issue of common law marriage in either the ejectment action or the divorce action.

■ Default judgments are never viewed with favor. In *American Bank of Commerce v. Chavis*, 651 P.2d 1321 (Okla.1982), the Supreme Court held the negligence of an attorney while representing his client is imputed to the client and constitutes negligence of the client. However, the Court also reasoned:

"But having so determined, there remains the question of whether the gravity of the inadvertence or neglect of a party is such as ought, under the particular circumstances of each case, to deprive the neglectful party of his day in court."

We held in *Upton v. Shipley* [170 Okla. 422, 40 P.2d 1048 (1935)]:

"The true rule is that while the application is addressed to the sound legal discretion of the court, the discretion is to be exercised in the furtherance of justice on the facts of the case. The moving party must show recognized grounds therefore."

In the instant case, this Court holds neither the gravity of the inadvertence nor the neglect of Tom's counsel is such as ought, under the particular circumstances, to deprive Tom of his day in court. Moreover, Tom demonstrated sufficient cause to warrant a vacation of the default judgment.

Certainly, the Supreme Court has expressed concern that an attorney's negligence in docketing court appearances, if too generously excused, is a potential device for delaying unduly the trial of a case. However, in this matter, the trial court denied the motion to vacate before the trial on the merits of the ejectment action. Thus, there remained the opportunity, without undue judicial burden, to allow Tom to present his evidence regarding the alleged common law marriage, a pivotal issue in the ejectment action. The trial court abused its discretion in denying Tom's motion to vacate the default judgment.

Accordingly, this matter is REVERSED and REMANDED with directions to vacate the default judgment and to allow Tom to present evidence on the issue of the alleged common law marriage.

JOPLIN and BUETTNER, JJ., concur.