2006 OK 74

Sarah **MANOKOUNE, Individually, and as Mother and Next Friend of Vichai Chansombatt, a minor, Plaintiff/Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Diron Ahlquist, Belinda Lunsford, and Equity Insurance Company, Defendants/Appellees,**

and

**Stephen D. Richardson, Defendant.**

No. 101,241.

Supreme Court of Oklahoma.

Oct. 10, 2006.

Robert T. Keel, Oklahoma City, OK, for Plaintiff/Appellant.

David V. Jones and Bruce A. Robertson, Jones, Andrews & Ortiz, P.C., Oklahoma City, OK, for Defendants/Appellees, State Farm Mutual Automobile Insurance Company and Diron Ahlquist.

Robert W. Hayden, Speck & Hayden, Oklahoma City, OK, for Defendants/Appellees, Belinda Lunsford and Equity Insurance Company.

COLBERT, J.

¶ 1 Plaintiff Sarah Manokoune, individually and in her capacity as the mother of the

minor Vichai Chansombatt,[1] has petitioned for this Court's review of an opinion by the Court of Civil Appeals affirming a summary judgment granted by the district court in favor of Defendants, State Farm Mutual Automobile Insurance Company and Diron Ahlquist (jointly, State Farm) and Equity Insurance Company and Belinda Lunsford (jointly, Equity).[2] The dispositive issue in this action arising out of Equity's assertion of a right of subrogation in a settlement paid by State Farm to Vichai is whether there are material facts in dispute such that the district court erred in granting summary judgment. We conclude that there are, vacate the Court of Civil Appeals' opinion, reverse the district court's summary judgment, and remand for further proceedings.

## BACKGROUND AND PROCEDURAL HISTORY

¶2 On April 30, 2002, 15–year–old Vichai was injured when the vehicle in which he was riding was involved in an accident with a vehicle driven by Stephen D. Richardson. Richardson, whose vehicle was insured by State Farm, was at fault. The vehicle in which Vichai was riding was insured by Equity, but neither Vichai nor Plaintiff were members of the policyholder's household or had seen the Equity policy.

¶3 Plaintiff incurred expenses of $3,891 for Vichai's medical treatment and sought reimbursement from Equity. In a letter dated August 2, 2002, Equity informed Plaintiff of the coverage available under the policy. Although the letter specified several conditions Equity would impose on any payment made under the policy, it did not mention that the policy reserved Equity's right to be subrogated to any recovery Plaintiff or Vichai might have against Richardson or State Farm. On August 12, 2002, Equity issued a draft for $3,891 payable to Plaintiff. Again,

there was no mention that Equity would assert a subrogation interest.

¶4 In a letter dated September 3, 2002, Equity notified State Farm that it had determined that Richardson was at fault for the accident and requested that State Farm reimburse Equity for the payment it had made for Vichai's medical expenses. In a second letter dated September 9, 2002, Equity again notified State Farm of its subrogation claim and stated that no one could release this interest except Equity's representative. A third letter on October 8, 2002, reiterated Equity's subrogation claim and clarified that Vichai was not Equity's policy-holder.

¶5 In the meantime, State Farm sent a letter on September 18, 2002, to Plaintiff's attorney to confirm its settlement offer of $6,891. The letter did not disclose the right of subrogation Equity had already asserted. Plaintiff accepted the offer on Vichai's behalf.

¶6 Because Vichai was a minor, the parties filed a friendly suit in the District Court of Oklahoma County, Case No. CJ–2002–8499, to obtain court approval of the settlement. The petition, prepared by State Farm, confirmed that the parties had agreed to settle Vichai's claim against State Farm for $6,891. The petition noted that Plaintiff was "obligated to pay medical expenses incurred to date by the minor plaintiff and [would] incur additional medical expenses in the future." At the hearing, the judge questioned the medical expenses and both parties confirmed that no medical expenses would be paid out of the settlement. State Farm did not disclose Equity's subrogation claim to Plaintiff or to the court. The court approved the settlement and entered an order to disburse the settlement proceeds which reflected the parties' representations: $0 for medical expenses; $966 for Vichai's use; $1,852.45 for attorney fees and expenses; and $4,072.55 to be placed in a trust account

---

1. Sarah Manokoune is also known as Ampawn Chansombatt. Although the record reveals occasional confusion about the spelling of the parties' names, we have adopted the spelling in the district court's case style as taken from Plaintiff's petition.

2. In her Petition, Plaintiff described Defendant Diron Ahlquist as Defendant State Farm's

"agent, servant and employee" and Defendant Belinda Lunsford as Defendant Equity's "agent, servant and employee." While Ahlquist's and Lunsford's exact status is not clear in the summary judgment record, all Defendants have proceeded as if Plaintiff's descriptions are accurate. Further, any distinction is not relevant to our analysis today.

until Vichai's 18th birthday. The order also directed Plaintiff's and Vichai's attorney to deliver a certified copy of the order to the banking institution where the trust account was placed.

¶ 7 The draft issued by State Farm and given to Plaintiff at the conclusion of the hearing was made payable to Plaintiff, Vichai, their attorney, and *Equity*. Neither Plaintiff nor her attorney noticed Equity's name until the attorney unsuccessfully attempted to deposit the draft in compliance with the court's order. When the attorney contacted Equity and State Farm, he was informed for the first time about Equity's subrogation claim. Also for the first time, Equity produced a copy of the policy language addressing subrogation. Equity refused to endorse the draft or release its subrogation claim and State Farm refused to reissue the draft without Equity's name.

¶ 8 Plaintiff filed this lawsuit on December 13, 2002, against Richardson, State Farm, and Equity based on the following theories of recovery: specific performance as to Richardson; conspiracy to tortiously interfere with a settlement agreement as to Equity; conversion as to State Farm and Equity; and fraud and deceit as to State Farm. Equity filed a counterclaim for its subrogation interest. Following Richardson's dismissal for lack of service, State Farm and Equity both filed motions for summary judgment. The trial court granted both motions, resulting in a judgment in Equity's favor for $3,891.

¶ 9 Plaintiff appealed and the Court of Civil Appeals affirmed. After the Court of Civil Appeals denied her motion for rehearing, Plaintiff filed a petition for certiorari with this Court. We have previously granted certiorari and proceed now to the merits of Plaintiff's petition.

## STANDARD OF REVIEW

¶ 10 Summary judgment is proper only when the moving party presents evidentiary materials establishing that all of the uncontroverted facts and all of the inferences that can be drawn from those uncontroverted facts support only one conclusion: that the party seeking judgment is entitled to it as a matter of law under all of the legal theories raised by the uncontroverted facts and inferences. *See Wathor v. Mut. Assurance Adm'rs, Inc.,* 2004 OK 2, ¶ 4, 87 P.3d 559, 561; *Hadnot v. Shaw,* 1992 OK 21, ¶ 25, 826 P.2d 978, 987.

## DISCUSSION

¶ 11 In her petition for certiorari, Plaintiff contends that the Court of Civil Appeals erred in its analysis of several issues. Equity and State Farm have both argued that some of Plaintiff's arguments are foreclosed because she failed to raise them until she sought rehearing from the Court of Civil Appeals. Plaintiff, however, has consistently argued that Equity wrongfully asserted, with State Farm's assistance, a right of subrogation against the settlement she entered on Vichai's behalf with State Farm. Because there are disputed material facts regarding the existence and/or enforceability of Equity's subrogation right, summary judgment was in error. Any issues Plaintiff should have raised at an earlier point in the proceedings are merely ancillary to this central issue.

¶ 12 Equity's policy language was clearly intended to reserve Equity's right to be subrogated to any recovery by Plaintiff or Vichai from State Farm.

OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.
* * *

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery, and

2. Reimburse us to the extent of our payment.

This form of subrogation is permitted by statute. 36 O.S.2001 § 6092.

¶ 13 The dispositive issue, however, is not whether Equity intended to or could establish a right of subrogation, but whether the undisputed facts lead to the inescapable conclusion that it actually did establish such a right as a matter of law. Only if that threshold issue was established could the court have properly considered either party's motion for summary judgment. The evidentiary material submitted by the parties creates a dispute as to whether Equity had a right of subrogation enforceable against the settlement Plaintiff reached with State Farm. Because that material fact is disputed, the trial court should not have granted summary judgment.

¶ 14 At a minimum, Equity did not establish that Plaintiff had notice of the claimed subrogation right. There is no dispute that Plaintiff had no actual notice of Equity's subrogation claim. Although neither of the lower courts considered the issue of notice to any great degree, an exhaustive review of our case law has led us to conclude that it is and has always been of primary importance. Whenever this Court has addressed the issue, the existence of a party's actual notice of the subrogation interest has either been expressly addressed or can be assumed from the facts. For example, we have held that an insurance policy's subrogation clause was enforceable against the policy-holder because he was both a party to the contract *and* was given direct notice of the subrogation clause before he settled with the third-party tortfeasor. *State Farm Fire & Cas. Ins. Co. v. Farmers Ins. Exch.,* 1971 OK 120, 489 P.2d 480. We have also upheld a subrogation claim against a passenger/non-policy holder who signed a separate subrogation agreement when he recovered from the driver's insurance carrier. *King v. Woodward,* 1972 OK 46, ¶¶ 5–6, 496 P.2d 801, 802.

■ ¶ 15 To settle this area of the law, we hold that notice is an essential element to a successful subrogation claim. Equity can enforce a right of subrogation in the settlement Plaintiff and Vichai received from State Farm only if it first establishes that Plaintiff had notice when Equity paid the benefits that it was reserving a subrogation interest. Notice can be actual or constructive, but it must exist at the time the party against whom a subrogation claim is made received the funds that form the basis of the claim. *See generally King,* 1972 OK 46, ¶¶ 5–6, 496 P.2d at 802; *State Farm v. Farmers,* 1971 OK 120, ¶ 8, 489 P.2d at 482.

¶ 16 State Farm and Equity assert without citation to authority that Plaintiff had constructive notice of the policy's subrogation clause and all of the other terms of the policy because she accepted benefits. The Court of Civil Appeals accepted this assertion when it observed, also without citation to authority, that "Plaintiff and her counsel demanded benefits under the provisions of Equity's policy. Thus, they are likewise charged with knowledge of the conditions imposed upon such payment by the policy's provisions." We disagree. Constructive notice cannot simply be inferred in all situations.

¶ 17 Certainly, this Court has pronounced the general truism that "[i]n accepting the benefits of the policy they are bound by the terms thereof." *State Farm v. Farmers,* 1971 OK 120, ¶ 8, 489 P.2d at 482. The pronoun "they" in that statement, however, refers to "policy-holders," who are charged with knowledge of the terms of the policy they have purchased. *See also Aetna Cas. & Sur. Co. v. Assocs. Transps., Inc.,* 1973 OK 62, 512 P.2d 137; *Blocker v. Nat'l Disc. Ins. Co.,* 1972 OK 16, 493 P.2d 825. The statement has never been directed to those receiving benefits under policies to which they were not parties.

■ ¶ 18 Constructive notice "is notice imputed by the law to a person not having actual notice." 25 O.S.2001 § 12. "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." 25 O.S.2001 § 13. For constructive notice to be imputed as a matter of law, there must first be a finding that there are facts sufficient to "put a prudent man upon inquiry." The existence of facts or circumstances sufficient to put one on inquiry

presents a question of fact inappropriate for summary disposition. *See McCathern v. City of Okla. City*, 2004 OK 61, ¶ 20, 95 P.3d 1090, 1098 ("Where the defect is of such character that careful or prudent persons might reasonably differ ..., the question ... is one of fact."); *Phelps v. Hotel Mgmt., Inc.*, 1996 OK 114, ¶¶ 8–10, 925 P.2d 891, 894 (whether a condition was "open and obvious" is a question of fact); *Terry v. Edgin*, 1977 OK 35, ¶¶ 28–31, 561 P.2d 60, 66–67 (circumstances giving rise to actual or constructive notice always present a question of fact). The finding that Plaintiff had constructive notice of Equity's subrogation interest was inappropriate for purposes of summary judgment.

¶ 19 Not only did Equity and State Farm fail to establish the existence of Equity's subrogation claim, they also failed to establish that Equity was entitled to enforce that subrogation claim against the settlement paid by State Farm. Oklahoma has adopted the "make whole" rule in regard to subrogation interests.[3] *Reeds v. Walker*, 2006 OK 43, ¶¶ 26–32, —— P.3d ——, ——, 2006 WL 1686739; *Equity Fire & Cas. Co. v. Youngblood*, 1996 OK 123, ¶ 15, 927 P.2d 572, 576–77. Generally speaking, if the compensation a beneficiary has received from a third party represents less than full compensation and the contract giving rise to a subrogation interest does not stipulate that it has priority over any other funds the beneficiary might receive, the subrogation contract is not enforceable. *Youngblood*, 1996 OK 123, ¶ 15, 927 P.2d at 576–77. "[An] insurance contract stands subject to the make-whole rule unless it contains an unequivocal, express statement that the insured does not have to be made whole before the insurer is entitled to recoup its payments." *Reeds*, 2006 OK 43, ¶ 31, —— P.3d at ——. For the purposes of summary judgment, the insurance company bears the burden of proving that the insured has been fully compensated; it cannot obtain summary judgment on the issue without establishing that undisputed fact. *Id.*

¶ 20 Further, while State Farm has protested, again without citation to authority, that it was compelled to place Equity's name on the settlement check once it received notice from Equity, that fact is far from clear. Certainly, Equity had protected its subrogation interest as to State Farm, but, without more, we cannot say as a matter of law that State Farm was compelled to enforce the subrogation claim against the settlement it reached with Plaintiff.

¶ 21 This brings us to Plaintiff's claims against State Farm. State Farm has asserted that it had no duty to inform Plaintiff of Equity's subrogation interest because it was not in a fiduciary relationship with Plaintiff. The lower courts accepted this argument with little or no discussion, apparently based on their assumption that the enforceability of Equity's subrogation claim was a given. Regardless of the enforceability of Equity's subrogation interest, however, we cannot accept State Farm's assertion that it had no duty to speak as a matter of law.

¶ 22 Fraud is "a generic term with multiple meanings" and can be applied in either legal or equitable causes of action. *Patel v. OMH Med. Ctr., Inc.*, 1999 OK 33, ¶ 34, 987 P.2d 1185, 1199. State Farm has focused on the nature and elements of actual fraud, but Plaintiff's claim is more in the nature of constructive fraud. While actual fraud is "the intentional misrepresentation or concealment of a material fact which substantially affects another person," constructive fraud involves the "breach of either a legal or equitable duty." *Id.* Constructive fraud "does not necessarily involve any moral guilt, intent to deceive, or actual dishonesty of

---

**3.** Plaintiff did not make this argument until she filed her petition for rehearing in the Court of Civil Appeals. Normally, the failure to raise an issue before the trial court and in the initial appeal results in a waiver of that issue. *See generally Markwell v. Whinery's Real Estate, Inc.*, 1994 OK 24, ¶ 8, 869 P.2d 840, 843. This issue, however, is not dispositive because of the holding we have already reached on the issue of notice. Further, the "make whole" rule is an indispens-

able part of an insurance company's right to be subrogated. *Equity Fire & Cas. Co. v. Youngblood*, 1996 OK 123, ¶ 15, 927 P.2d 572, 576–77. Plaintiff's attorney's failure to raise the issue does not excuse Equity's and State Farm's attorneys from informing the court of legal authority directly adverse to their clients. *See* Rule 3.3(a)(3) of the Rules of Professional Conduct, 5 O.S.2001, ch. 1, app. 3–A.

purpose [and] may be defined as any breach of a duty which . . . gains an advantage for the actor by misleading another to his prejudice." *Id.*

¶ 23 State Farm obtained a settlement agreement from Plaintiff without once mentioning the fact that the settlement amount they had agreed upon would not actually represent the amount received by Vichai. State Farm's attorney stood in a court of law and represented to a judge that the settlement agreement described in the friendly suit pleadings represented the parties' agreement and agreed in form to an order declaring the mandatory split of that settlement amount between Vichai, a trust account for Vichai, and his attorney. In fact, that order did not represent the split of funds contemplated by State Farm because it failed to account for Equity's claim of more than half of the proceeds. State Farm and its attorney were aware that Plaintiff's attorney could not, therefore, comply with the court's order because State Farm had already issued the draft that included Equity's name. We cannot accede to or condone that conduct and will not say that it does not, as a matter of law, amount to at least constructive fraud.[4] While State Farm may have assumed that Plaintiff was aware of Equity's claim, the reasonableness of that assumption, particularly given Plaintiff's manifested intent regarding the planned split of the settlement funds, is a question of fact inappropriate for summary judgment.

¶ 24 State Farm has attempted to shift the focus by emphasizing the failures of Plaintiff's counsel, asserting that he should have 1) instructed his client regarding the likely fact that Equity would seek subrogation; 2) inspected the settlement check immediately; 3) filed a motion for new trial in the friendly suit; and 4) appealed from the final order in the friendly suit. We cannot accept these as reasons to conclude that Plaintiff's claim cannot succeed as a matter of law. First, "the likely fact that Equity would seek subroga-

tion" is a question of fact inappropriate for summary judgment. Second, we decline to state a rule of law that an attorney cannot rely on the representations of another attorney before a judge and must inspect every portion of a document before leaving the judge's presence to confirm that it comports with the other attorney's representations. Third and fourth, Plaintiff had no need to seek a new judgment in the friendly suit, since it conformed to the settlement agreement reached by the parties. There was no alteration necessary to achieve Plaintiff's objective. It was State Farm's fulfillment of the judgment and settlement agreement that was arguably lacking.

## CONCLUSION

¶ 25 We take no position on the likelihood of Plaintiff's ultimate success in her claims against Equity and State Farm. We conclude, however, that the undisputed facts and the permissible inferences from those undisputed facts do not relieve Equity and State Farm of liability as a matter of law for failing to disclose Equity's subrogation interest to Plaintiff.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; DISTRICT COURT'S JUDGMENT REVERSED; AND MATTER REMANDED FOR FURTHER PROCEEDINGS.**

CONCUR: WATT, C.J., LAVENDER, HARGRAVE, EDMONDSON, COLBERT, JJ.

CONCUR IN RESULT: OPALA, KAUGER, JJ.

DISSENT: WINCHESTER, V.C.J., TAYLOR, J.

---

4. At a minimum, the facts alleged by Plaintiff support consideration of the theory of "estoppel by silence," where "the one who is estopped has in effect stood by and, in violation of his duty in equity and good conscience to warn another of the real facts, has permitted the other to take

some action detrimental to that other's interest, [remaining] silent on some occasion when he should have spoken." *Strahm v. Bd. of Trustees of the Benevolent & Protective Order of Elks*, 1950 OK 295, ¶ 0, 225 P.2d 159, 160 (syl. no. 1 by the Court).