2010 OK CIV APP 73

**Jack Michael LAMB,
Petitioner/Appellant,**

v.

**STATE of Oklahoma ex rel. PROTECTIVE HEALTH SERVICES OF THE STATE HEALTH DEPARTMENT, Respondent/Appellee.**

No. 106,827.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 25, 2010.

George Zellmer, McAlester, OK, for Petitioner/Appellant.

Charles L. Broadway, Office of General Counsel, State Department of Health, Oklahoma City, OK, for Respondent/Appellee.

CAROL M. HANSEN, Judge.

¶1 Appellant, Jack Michael Lamb (Lamb), appeals from an order of the trial court which affirmed the determination of Appellee, State Department of Health (Department), to record in Department's "Nurse Aide Registry" (the Registry) that Lamb committed mistreatment and abuse of a long-term care facility resident. We hold the trial court erred in failing to remand the case to Department for taking and consideration of further evidence, and reverse.

¶2 At the time of the alleged mistreatment and abuse, Lamb was the Chief Executive Officer of the long-term care residential facility, McCall's Chapel School (McCall's), in Ada, Oklahoma. However, this action is limited to Lamb's status as a certified nurse aide and whether an entry of resident mistreatment and abuse should be added to Lamb's information in the Registry pursuant to 42 U.S.C. §§ 1396r(e)(2) and 1396r(g)(1)(C); 42 C.F.R. §§ 483.156 and 488.335; and 63 O.S.Supp.2004 § 1–1951.

¶3 The foregoing sections, enacted as part of the federal Medicare and Medicaid mandate to states, provide, *intra alia*, for [1] establishment of a nurse aide registry, [2] procedures for investigation of alleged abuse, neglect or misappropriation of property of residents in various types of long term care facilities, [3] documenting findings in the Registry after notice and hearing, and [4] prohibiting employment by a facility of individuals who are the subject of Registry abuse, neglect or misappropriation entries.

¶4 The allegations here are that Lamb sexually abused McCall's resident A.R., who was described in the report of investigation conducted by the Medicaid Fraud Control Unit, Office of the Attorney General, as suffering from, among other things, "moderate mental retardation, Down's Syndrome." That report of investigation further reflects the following. The abuse was alleged to have taken place on December 14, 2003. The case was opened in the Attorney General's office on December 17, 2003, on a referral from the Human Resources Director of McCall's. Two Department Incident Reports, dated December 15 and 22, 2003, which were admitted separately from the Attorney's General's report, state someone from the Attorney General's office had already visited McCall's by the date of the second and final report.

¶5 The Attorney General's report additionally shows the investigation, which served as the basis for Department's administrative action, was conducted on May 3, 2004, and the report was prepared on that same date. The report further indicates Lamb had resigned from McCall's and moved out of state. Lamb had retained legal counsel, and counsel declined to allow Lamb to be interviewed by the investigator. Finally, the report reveals the investigation was closed on May 12, 2004, after the cognizant Assistant Attorney General "declined to file charges saying that the court proceedings would possibly cause more harm to [A.R.]."

¶6 The record reflects the Attorney General's May 2004 report of investigation was transmitted by the Attorney General's office to Department by facsimile on November 5, 2004. Department filed its intra-departmental *Petition* to begin an "individual administrative proceeding" against Lamb on June 24, 2005. The *Petition* states Lamb was notified of the allegations against him by Department's letter mailed on June 2, 2005, and that on June 22, 2005, Lamb requested a "hearing to contest the allegations." The matter was set for hearing on August 23, 2005.

¶7 However, Lamb, also on June 22, 2005, sent Department a *Motion to Dismiss and Objection to Jurisdiction and Motion to Stay Proceedings*. In this motion, Lamb stated he was notified of the abuse allegations by Department's letter of May 19, 2005. Lamb asserted Department was required by 42 C.F.R. § 488.335(c)(2)[1] to notify him of the

---

1. Section 488.335(c) provides:

    (c) Notification—

(1) Individuals to be notified. If the State makes a preliminary determination, based on oral or written evidence and its investigation,

investigation against him within ten working days, but that Department's notification came more than a year after the investigation had been completed. Lamb further asserted Department was therefore "out of time to proceed, and as such, is without jurisdiction to take this action." He asked Department's *Petition* be dismissed.

¶ 8 On August 19, 2005, Lamb filed a *Petition for Writ of Prohibition* in the district court asking the court to prohibit Department from proceeding until the issue of jurisdiction was settled. A copy of Lamb's *Petition for Writ of Prohibition* was filed with Department on August 22, 2005, along with a *Motion for Continuance* asking the August 23rd hearing be continued.[2]

¶ 9 In its objection to Lamb's motion to dismiss its intra-departmental *Petition*, Department submitted its investigation was finished on May 15, 2005, and that it provided notice to Lamb on May 19, 2005, "or within ten (10) working days of the *completion* of the investigation." (Emphasis added). Thus, Department argued, it had complied with the ten day dictate of § 488.335(c)(2). Department additionally maintained it had been statutorily "entrusted and empowered with the affirmative duty to regulate and manage [the Registry]," and accordingly had jurisdiction to pursue the complaints against Lamb.

¶ 10 On September 14, 2005, the administrative law judge (ALJ) hearing the matter issued and filed an order finding the question of timely notification was one of fact, making dismissal improper. The ALJ also found Department had jurisdiction over matters relating to licensing of nurse aides and the Registry and denied Lamb's motion to dis-

miss. In this order, the ALJ set the case for hearing on October 27, 2005.

¶ 11 The ALJ called the case at the appointed time on October 27th. Neither Lamb nor his counsel made an appearance. The ALJ noted the green return card addressed to Lamb's counsel with the order setting the date of hearing had been signed on September 16, 2005, but by someone other than counsel. The ALJ considered Lamb's failure to appear as an admission of Department's jurisdiction and the allegations in Department's *Petition*. Department nonetheless offered the Attorney General's report of investigation, and the above mentioned Department incident reports, as "factual support for the Court's essentially ... default judgment." No witnesses were heard, nor other evidence adduced. The ALJ announced the record closed at the end of the hearing.

¶ 12 On March 27, 2006, the ALJ filed his *Final Administrative Decision and Order* finding in favor of Department.[3] The ALJ made findings of fact based on witness statements contained in the Attorney General's report of investigation. The ALJ concluded Lamb had "engaged in improper contact with a resident that was sexual in nature and violated his obligations of care pursuant to prevailing Oklahoma and federal law." The ALJ ordered Department to reflect in the Registry that Lamb had "committed mistreatment and physical abuse of a resident." There is nothing in the record to explain the delay by the ALJ in filing the final order,[4] nor is there anything indicating Lamb asked Department to rehear or reconsider its order as authorized by 75 O.S.2001 § 317.

¶ 13 Lamb did file a timely *Petition for Judicial Review* in accordance with 75 O.S.

---

that the abuse, neglect or misappropriation of property occurred, it must notify in writing—
(i) The individuals implicated in the investigation; and
. . .
(2) Timing of the notice. The State must notify the individuals specified in paragraph (c)(1) of this section in writing within 10 working days of the State's investigation.

**2.** The record does not reflect what action, if any, the trial court took on Lamb's *Petition for Writ of Prohibition*.

**3.** Section 310:677–7–4(a) of the Oklahoma Administrative Code, which regulates issuance of orders in matters relating to the Registry, provides:

The [ALJ] shall issue a decision with fifteen (15) working days following the close of the hearing record. . . .

**4.** See note 3, *supra*.

2001 § 318(B)(2) on April 26, 2006. This *Petition* related Lamb had raised the issue of Department's jurisdiction by his pleadings there and that he had moved for continuance on August 22, 2005. Lamb stated he had received a letter from Department informing him the August 23, 2005 hearing had been continued, but no new date was given. Lamb's *Petition* asserted the next notification he or his counsel received was the March 27, 2006 final order issued by the ALJ. He further asserted the October 27, 2005 hearing was held without notice to him or counsel. Lamb again contended Department was without jurisdiction to proceed against him because Department had failed to provide the timely 10 day notice of investigation required by 42 C.F.R. § 488.335.

¶ 14 In its May 3, 2006 *Answer*, Department denied those portions of Lamb's *Petition* alleging lack of [1] notice, both as to Department's investigation and the October 27, 2005 hearing, and [2] jurisdiction in the administrative proceedings. After some delay in Department's filing the administrative record, a briefing and oral argument schedule was set, with briefing beginning in May 2008.

¶ 15 Meanwhile, in March 2008, Lamb's counsel withdrew after Lamb had retained other counsel. On April 24, 2008, the counsel who had withdrawn filed an affidavit with the trial court stating Lamb did not appear at the October 27, 2005 hearing "[d]ue to an oversight in [Counsel's] office." The affidavit states Lamb was not informed of the hearing because, although the order setting the date of hearing was received in his office by a member of his staff, it was mistakenly not placed in Lamb's file, nor was it "calendared."

¶ 16 After briefing by the parties, the matter was heard for argument in the trial court on July 29, 2008. At this hearing, Lamb offered certain affidavits which he suggested would counter the statements contained in the Attorney General's investigative report. The affidavits had only recently been obtained and had not been offered in the administrative proceedings. Department objected because Lamb had failed to comply with the deadline for submission of the affidavits set by the court, and because the trial court was restricted to the administrative record, unless irregularities in Department's procedures were alleged. *See,* 75 O.S.2001 § 321. The trial court sealed the affidavits without viewing them, and asked the parties to provide further briefing on whether they could be considered.

¶ 17 Lamb, relying on the affidavit of his former counsel, also asked the trial court to vacate Department's default final administrative order because [a] his failure to appear was due to no fault of his own, and [b] he was denied due process when Department failed to give him timely notice of its investigation into the allegations against him.

¶ 18 The trial court filed its *Journal Entry of Judgment* on January 23, 2009. The court denied Lamb's request to consider the extraneous affidavits and found in favor of Department. The trial court entered specific findings regarding the major issues. The court found Department had complied with the notice requirements of 42 C.F.R. § 488.335(c)(2) when it gave Lamb notice of the investigation within 10 days of the date it concluded its investigation. The trial court further found Lamb's failure to appear at the October 2005 hearing "was not occasioned by excusable cause or unavoidable casualty" so as to justify vacating Department's final order, even though the failure to appear was due to negligence of counsel, citing *American Bank of Commerce v. Chavis,* 1982 OK 66, 651 P.2d 1321. Finally, the court found Department's decision was "well grounded in fact and law." Lamb brings his appeal from the trial court's judgment.

¶ 19 Here, Lamb first reiterates his contention Department deprived him of due process by not giving him written notice within 10 days of *commencement* of its investigation, pursuant to 42 C.F.R. § 488.335(c)(2). Secondly, he contends the trial court should have remanded the matter to Department for rehearing where he could present his case.

■■■ ¶ 20 Review of Department's administrative action is governed by the Administrative Procedures Act (APA), specifi-

cally 75 O.S.2001 § 322.[5] Under the APA, the district court, the Court of Civil Appeals, and the Supreme Court apply the same review standards to the administrative record under § 322. *City of Tulsa v. State ex rel. Public Employees Relations Bd.,* 1998 OK 92, 967 P.2d 1214. Generally, an administrative decision should be affirmed if the administrative proceedings are free from prejudicial error to the appealing party. *Id.,* at 1219. The reviewing court may not substitute its judgment for that of the agency as to the weight of the evidence. *Id.*

¶ 21 The parties' contentions and arguments regarding Lamb's assertion he was denied due process by Department's failure to give him 10 days notice of its investigation center on their respective interpretations of 42 C.F.R. § 488.335(c)(2). Normally, that would be a question of law to be reviewed *de novo,* but we need not decide that issue because [1] we find Lamb had, at a minimum, constructive notice of the investigation, and [2] presuming *arguendo* the notice was to be given within 10 days of initiating the investigation as Lamb contends, he has failed to establish how he was *actually* prejudiced by the failure to do so.

■ ¶ 22 In her sworn statement reported in the Attorney General's report, McCall's then human resources director stated she had called Lamb the day after the alleged abuse and advised him of the allegation against him. The report also contains a statement from one of McCall's nurses that Lamb, shortly after the alleged incident, asked if she was aware of what was going on with him. When she answered that she did not, Lamb said—"I'm being accused of sexual inappropriateness with [A.R.]." The Attorney General's report also relates that "Lamb secured legal counsel shortly after the allegation surfaced." Finally, as noted above, an incident report submitted to Department from McCall's states that by less than 10 days later a representative of the Attorney General's office had already visited the facility with respect to the allegations.

¶ 23 In *Manokoune v. State Farm Mut. Auto. Ins. Co.* 2006 OK 74, 145 P.3d 1081, the Supreme Court quoted from 25 O.S.2001 § 13—"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself." The facts set forth in the foregoing paragraph, considered together, are certainly sufficient to have put Lamb "upon inquiry" that he was accused of "sexual inappropriateness" and that the allegations were being investigated with a view toward administrative and/or criminal action. Further, Lamb has provided no legal authority that failure to provide actual written notice is otherwise jurisdictional, or imposed some limitations bar to administrative action under Department's Registry statutory authorization.

■ ¶ 24 We also find no merit to Lamb's argument that he was denied due process by Department's alleged failure to provide him written notice within 10 days of initiation of its investigation. Lamb was immediately aware of the allegations against him. He

---

5.  (1) In any proceeding for the review of an agency order, the Supreme Court or the district or superior court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:
(a) in violation of constitutional provisions; or
(b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
(f) arbitrary or capricious; or
(g) because findings of fact, upon issues essential to the decision were not made although requested.
(2) The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.
. . . .

retained legal counsel "shortly after the allegation surfaced." On advice of counsel, he gave no statement that would have prejudiced him. While he complains that failure to give timely notice prejudiced his ability to obtain and preserve possibly exculpating evidence, there is nothing in the record to show that actually happened. In fact, the affidavits he sought to introduce in the trial court proceedings to rebut statements in the Attorney General's report were obtained in July 2008.

¶ 25 While we have some concern about Department's repeated unexplained delays in making its allegations formal and in prosecuting its administrative action, we have not been informed of any actual prejudice occasioned by those delays or by Department's giving written notice of the allegations in May 2005. Lamb has conceded Department did give proper notice of its hearing set for October 27, 2005, but contended in the trial court, and again here, he should not suffer the consequences of an administrative order rendered through default caused by apparent negligence in his former counsel's office. We do find merit in this latter contention.

¶ 26 The trial court found that "[a]lthough [Lamb's] failure to appear may have been due to the negligence of his attorney, such negligence, by itself, does not constitute an unavoidable casualty" such as to warrant vacation of Department's order. In so finding, the trial court relied on *American Bank of Commerce v. Chavis*, 651 P.2d at 1323. *Chavis*, at 1323, does state—"This Court has repeatedly held that the negligence of an attorney while representing his client is imputed to the client and constitutes negligence of the client, and accordingly does not constitute unavoidable casualty and misfortune, justifying the vacation of a judgment." The Court also reaffirmed its holdings that an attorney's negligence is imputed to the client.

¶ 27 However, the *Chavis* Court, later in its consideration relates that "having so determined, there remains the question of whether the gravity of the inadvertence or neglect of a party is such as ought, under the particular circumstances of each case, to deprive the neglectful party of his day in court." The Court, at 1324, found its prior holdings were "unduly harsh and restrictive and tend unjustly to reduce to ukase that which ought to be weighed and determined under all of the facts and circumstance of each case." In weighing the facts, the court's "discretion is to be exercised in the furtherance of justice." In *Chavis*, the default resulted from "a breakdown in office procedure, together with reliance upon misinformation received by telephone from a deputy court clerk." Under those facts the Supreme Court held "the trial court did not clearly abuse its discretion in setting aside the default judgment."

¶ 28 The Court of Civil Appeals reached a similar conclusion in *Heitman v. Brown*, 1996 OK CIV APP 148, 933 P.2d 948. There, the attorney "mis-docketed" the date for the second day of a hearing and missed the hearing where the trial court granted a default judgment. The default judgment deprived the party of the opportunity to present evidence on a critical issue. The trial court denied the party's motion to vacate the default judgment. The Court of Civil Appeals, citing *Chavis*, restated the often expressed rule that "[d]efault judgments are never viewed with favor," and reversed the trial court's denial of the motion to vacate. The Court of Civil Appeals noted "the Supreme Court has expressed concern that an attorney's negligence in docketing court appearances, if too generously excused, is a potential device for delaying unduly the trial of a case." This is clearly not a factor here, where there have been repeated unexplained delays by Department in initiating the administrative action.

¶ 29 As we have discussed at length above, Lamb relies on the alleged failure by Department to give timely notice of its investigation to make his constitutional case. Such a constitutional infirmity would have been prospective grounds for setting aside or reversing and remanding Department's final order under 75 O.S.2001 § 322(1)(a).[6] However, we have held there was no constitutional deprivation here. Additionally, we are un-

---

6. Note 5, *supra*.

convinced Lamb has established any of the other grounds set forth in § 322(1).

¶ 30 However, § 322(1) is not the only authority in § 322 to return the matter to the administrative agency for further consideration. In addition to the specific grounds set forth in § 322(1), § 322(2) provides:

> The reviewing court, also in the exercise of proper judicial discretion or authority, may remand the case to the agency for the taking and consideration of further evidence, if it is deemed essential to a proper disposition of the issue.

¶ 31 The question is then whether it is deemed essential to a proper disposition of the allegations against Lamb for Department to consider further evidence. We hold that it is. Because of the default administrative order issued by the ALJ, Lamb was deprived of any opportunity to challenge Department's evidence or to present evidence in his own defense. The Supreme Court has recognized that in administrative actions, "[t]he important point in the proceedings before the Board was that each party be accorded a full and fair hearing on all points at issue." *Corporation Commission v. Oklahoma State Personnel Bd.*, 1973 OK 94, 513 P.2d 116.

¶ 32 The ALJ did have the authority to grant a default order pursuant to 75 O.S.2001 § 309(E), and, under the facts then present, was justified in doing so. The facts relating to Lamb's failure to appear were then brought forward to the trial court upon review. Under *Chavis* and *Heitman*, the trial court erred in failing to exercise its § 322(2) "proper judicial discretion" to remand the case to Department for taking and considering Lamb's evidence, which was essential to a proper disposition of the allegations against him.

¶ 33 Pursuant to 63 O.S.Supp.2004 § 1–1951(D)(8), any long term care facility is barred from hiring Lamb because of the adverse Registry entry. The Supreme Court recognized the severity of administrative action precluding employment in *Protective Health Services v. Vaughn*, 2009 OK 61, 222 P.3d 1058, where it held, "[t]he loss of a license which is required to work in a given field negatively impacts both a person's livelihood and reputation." In *Miller v. Commis-*

*sioner of Health of the State of New York*, 90 N.Y.2d 783, 666 N.Y.S.2d 548, 689 N.E.2d 518 (1997), the Court of Appeals of New York noted an adverse Registry entry affects not only the ability to work in the residential health care industry, "but also may well extend to prevent future employment opportunities in any arena."

¶ 34 In view of the real, and potential, impact of Department's Registry entry, and the lack of any direct fault on Lamb's part in failing to appear for the hearing, we hold it is proper to remand the matter back to Department in accordance with § 322(2) to hear Lamb's evidence. This will afford Lamb the opportunity "to respond and present evidence and argument on all issues involved" as mandated under the APA in 75 O.S.2001 § 309.

¶ 35 The trial court's judgment is REVERSED and this matter is REMANDED to the Oklahoma Department of Health for further proceedings consistent with this opinion.

HETHERINGTON, J., concurs.

KENNETH L. BUETTNER, P.J., concurring in result:

¶ 36 I agree that this case should be remanded and Appellant should be allowed to present evidence. I disagree with the opinion insofar as it holds that constructive notice may satisfy the State's notice obligation under 42 C.F.R. § 488.335(c)(2). In this case, the Attorney General opened its case December 17, 2003, investigated the allegations and issued its report May 4, 2004, and closed its case May 12, 2004 with a decision not to prosecute. It is unclear why the Attorney General's report was not sent to the Department until November 5, 2005. The Department then says it finished its investigation May 15, 2005 and sent written notice to Appellant by letter dated May 19, 2005 but mailed June 2, 2005.

¶ 37 Simply being aware of the allegations, or even that the State has commenced an investigation does not satisfy the notice requirement.