2001 OK CIV APP 86

### Leonard BRANCH, Plaintiff/Appellee/Counter–Appellant,

v.

### AMERIRESOURCE GROUP, INC., Defendant/Appellant/Counter–Appellee/Third–Party Plaintiff,

v.

### Advanced Recruiting, Inc., An Oklahoma Corporation, Third–Party Defendant.

### No. 93,742.

Court of Civil Appeals of Oklahoma, Division No. 3.

Feb. 16, 2001.

Certiorari Denied May 1, 2001.

J. Matthew DeVilliers, Oklahoma City, for Plaintiff/Appellee/Counter–Appellant.

Jeffrey D. Black, Jeffrey D. Black & Associates, Oklahoma City, for Defendant/Appellant/Counter–Appellee/Third–Party Plaintiff.

BUETTNER, Presiding Judge.

¶1 Defendant/Appellant/Counter–Appellee/Third–Party Plaintiff AmeriResource Group, Inc. (Employer) appeals from a judgment entered against it following a bench trial. Plaintiff/Appellee/Counter–Appellant Leonard Branch sued Employer for commissions allegedly not paid to Branch after he terminated his employment. Employer filed its counterclaim against Branch for breach of an agreement not to compete. Because we find the trial court abused its discretion in denying Employer's quest to reopen its case to present additional evidence, we reverse in part and remand for proceedings consistent with this opinion.[1]

¶2 Branch began work as a recruiter for Employer, a staffing agency, in October 1995. On January 3, 1997, Branch submitted his resignation, which was to be effective January 10, 1997. Upon receipt of Branch's resignation letter, Employer terminated Branch's employment, effective January 3, 1997. Branch was employed pursuant to an employment contract which provided that commissions which were received by Employer before termination of employment would be paid to Branch.[2] In his petition, filed May 30, 1997, Branch alleged that Employer breached the employment agreement because Employer had failed to pay him $4,234.00 in commissions for three placements he made before terminating his employment.[3] Branch sought that amount plus liquidated damages.

¶3 Employer filed its counterclaim August 18, 1997 in which it averred that Branch breached a confidentiality agreement and an agreement not to compete which were part of his contract with Employer. Employer asserted causes of action for breach of contract, breach of fiduciary duty, interference with contract, interference with economic advantage, fraud, conversion, and misappropriation of trade secrets. Employer also sought punitive damages and an injunction.

¶4 Branch filed his motion for summary judgment September 23, 1998. The trial court denied the motion November 20, 1998. Employer filed its third-party petition against Advanced Recruiting, Inc. November 6, 1998. Employer alleged that Advanced Recruiting is a staffing firm started by Branch to compete with Employer. Employer alleged the same causes of action against Advanced Recruiting which it had alleged in its counterclaim against Branch. On January 29, 1999, the trial court granted the motion of Branch and Advanced Recruiting which requested separate trials.

¶5 A bench trial on the claims between Branch and Employer was held July 19, 1999. In its findings of fact, the trial court found that the three job placements for whom Branch sought unpaid commissions

---

1. The judgment on attorney fees on Branch's wage claim is affirmed. See note 9 below.

2. Branch was compensated with a combination of salary and commissions.

3. The commissions which Branch alleged were due were for "guaranteed placements" in which a commission is not paid to the staffing agency, and therefore to the recruiter (Branch), until the placed employee has worked for the client company for six months. Branch asserted that Employer owed him $600 for the placement of Bob Simpson (for whom the six month guarantee expired March 31, 1997); $2,166 for the placement of Jody Potter (for whom the six month guarantee expired May 1, 1997); and $1,408 for the placement of Joshua Vaccha (for whom the six month guarantee expired May 13, 1997). Branch asserted that the commissions on these placements was due from the hiring clients before he was terminated January 3, 1997.

were hired and on-the-job before Branch's employment was terminated. The trial court further found that Employer's clients had paid the commission checks on each of those placements before the effective date of Branch's resignation. The court noted that Employer conceded it owed Branch the $600 commission for the placement of Bob Simpson, but asserted that the checks for the other two placements were received by Employer after Branch was terminated and that company policy prohibited paying commissions received after an employee's termination. The trial court found, however, that Employer's policy of not paying commissions received after an employee's termination date did not apply to six month guarantee placements. The court found that Employer's "Policy on Placements with a Guarantee" provided that *"whenever* a placement fee is collected from a client" the commission would be paid to the recruiter, and that the policy indicated that Employer would hold such commissions until they are earned (by expiration of the guarantee period) and then distribute them to the recruiter. The trial court therefore determined that Branch was entitled to payment of the commissions on the three placements at issue in the instant case.

¶ 6   The trial court also found that Employer acted in bad faith in refusing to pay the $600 commission for the placement of Bob Simpson which was received by Employer well before Branch was terminated. The court accordingly awarded Branch an additional $600 in liquidated damages pursuant to 40 O.S.1991 § 165.3. The court did not award liquidated damages for the other two placements based on its finding that they were the subject of a bona fide dispute. The total judgment awarded to Branch was $4,774.00. The trial court held that Employer had failed to prove its counterclaim and affirmative defenses. The trial court finally held that Branch was entitled to prevailing party attorney fees under 40 O.S.1991 § 165.9, but reserved that determination pending the filing of a motion for such fees.

4.  The pre-trial conference order does indicate that the trial of the third-party claim against Advanced Recruiting will be a jury trial and that

¶ 7   Branch then filed his application for pre-judgment interest, attorney fees and costs. In its order filed October 14, 1999, the trial court held that Branch was entitled to an award of attorney fees spent pursuing his wage claim, but that Branch was not entitled to attorney fees spent defending against Employer's counterclaim, based on the trial court's finding that Employer did not act in bad faith in asserting the counterclaim. The court found that Branch was entitled to attorney fees for 63.3 hours at the rate of $125.00 per hour. The total costs and attorney fees awarded were $9,317.94, in addition to $629.71 in pre-judgment interest.

¶ 8   Employer's first assertion of error is that the trial court abused its discretion in denying Employer the opportunity to present evidence in support of Employer's counterclaim. Employer urges that, based on the pre-trial conference order, it believed the trial would be held in two stages so that, when Employer announced it was resting at the end of Branch's case, Employer understood that it would then be allowed to present its case on its counterclaim. We have reviewed the pre-trial conference order and find that it does not indicate the trial will be bifurcated.[4]

¶ 9   Trial in the instant case was held July 19, 1999. Branch presented one witness and then rested his case. In resting, counsel for Branch stated "I'm going to rest at this point in time and call Mr. Branch, if necessary, as a rebuttal witness on the counterclaims. But Plaintiff rests." The trial court then called upon Employer to present its case. Employer called three witnesses. After Branch's cross-examination of Employer's last witness, the following exchange occurred between the trial court and Mr. McDaniel, counsel for Employer:

> THE COURT: Okay. Mr. Martire, you may step down. You're excused, you may go. Call your next witness.
>
> MR. McDANIEL: We do have him subpoenaed and we're going to—the counterclaim—or no, we don't, they subpoenaed

trial of that case is bifurcated and will be scheduled at the conclusion of the non-jury trial of Branch's claim and Employer's counterclaim.

you. Great, you're released. Please hang around.

THE COURT: You need him to hang around?

MR. McDANIEL: I'm going to call Donna Saner as my next witness, Your Honor.

THE COURT: He's released. No one wants him back.

MR. McDANIEL: Okay. Sorry Your Honor, I'm having trouble with—someone had stepped down the hall. May I have one moment with my client? We may just rest.

THE COURT: Yes.

MR. McDANIEL: Your Honor, we rest our defense.

Branch then indicated he would like to recall one witness in rebuttal, which the court allowed. At the conclusion of that witness, the trial court asked Employer if it wished to present any surrebuttal which Employer declined to do. The trial court then asked for closing arguments and the following exchange occurred:

MR. McDANIEL: Do you want to hear the closing arguments on the wage claim case before you proceed into the counterclaims?

THE COURT: Well—

MR. McDANIEL: That makes sense, I would be happy to.

MR. DEVILLIERS (counsel for Branch): I'm ready, Your Honor.

THE COURT: I figured the case was over with.

MR. McDANIEL: We've got counterclaims.

MR. DEVILLIERS: It is, Your Honor.

THE COURT: Well, I agree. So, closing arguments.

Counsel for Branch then argued that Employer had not presented any evidence in support of its affirmative defenses or its counterclaim. Employer then asked:

MR. McDANIEL: Well, are you saying—

MR. DEVILLIERS: Your Honor, we—

MR. McDANIEL:—that we're not going to be able to try our counterclaims?

THE COURT: You rested.

MR. McDANIEL: We rested our defense, Your Honor. Are you suggesting that—we've got a hall full of witnesses here on our counterclaims. I misunderstood Your Honor if that was Your Honor's question.

* * *

MR. McDANIEL: Well, Your Honor, we have not rested on our counterclaims.

THE COURT: Mr. McDaniel, you have rested in this case. That was your opportunity to present whatever affirmative defenses or counterclaims you had. You rested.

MR. McDANIEL: Your Honor, I said that we still have our counterclaims, do you want to hear closing arguments just as to the first case. And I believe Your Honor said yes, I'll hear closing just as to the wage claim case and we'll put on our counterclaims. I—

THE COURT: Mr. McDaniel, when I try a case I do not try it one part here and one part there. You were supposed to put your entire case on, that's the only way you can try a case. When you rested, you rested. That was the end of your case.

MR. McDANIEL: Your Honor, I would ask you to reconsider that. And I did not understand Your Honor to say that. And for me to, on a misunderstanding when we've got a hall full of witnesses on the counterclaims, would be inequitable. And why should my client be penalized because of the fact that I may have misunderstood what you said. And what we're talking about as a matter of time here is about five minutes of dialogue that went on.

* * *

THE COURT: Sorry, Mr. McDaniel, but that was your opportunity to present your case, and you rested. We went through rebuttal evidence, they put on some and they rested. We went to surrebuttal, you didn't have any, and that ended the evidence in this case. That's it. So I'm ready to hear the closing arguments on the evidence that was presented and the issues that I have here.

Before he made his closing argument, Mr. McDaniel stated his objection to the trial court's decision to deny his quest to present

his case on the counterclaim. The trial court then announced that Employer's motion to reconsider was denied. The trial court indicated that what Employer was suggesting was that the parties present their evidence on one claim, receive a ruling, and then move on and present the counterclaim, which procedure the trial court did not approve of.

¶ 10  We review a trial court's decision on a motion to reconsider for an abuse of discretion. *Bank of Oklahoma, N.A. v. Portis*, 1997 OK CIV APP 32, 942 P.2d 249, 252. Likewise, we review the trial court's decision whether to reopen a case to allow a party to present further evidence for an abuse of discretion. *Guy v. State*, 1989 OK CR 35, 778 P.2d 470, 475; *Johnson v. Johnson*, 1983 OK 117, 674 P.2d 539. In order to find an abuse of discretion, we must find that the trial court made a clearly erroneous conclusion against reason and the evidence. *Portis, supra.*

¶ 11  We have found no Oklahoma case with facts directly on point to aid our review of the court's exercise of discretion in the instant case. However, Oklahoma courts have generally held that in order to reopen a case for presentation of further evidence, a party must show that it used due diligence to procure the testimony or evidence before it rested. *Johnson, supra*, 674 P.2d at 545; *White v. City Natl. Bank of Norman*, 1954 OK 44, 271 P.2d 713; *City of Mangum v. Brownlee*, 1938 OK 6, 75 P.2d 174, 181 Okla. 515.

¶ 12  Cases from several other courts have propounded a variety of factors to be weighed, either by the trial court in making its decision whether to reopen, or by the appellate courts in determining whether the trial court abused its discretion in making such a decision. Federal courts have indicated that the trial court should weigh the timeliness of the motion, the character of the additional testimony, and the effect of granting the motion. Additionally, the moving party should offer a reasonable explanation for its failure to introduce the testimony in its case in chief, and the additional evidence should be relevant, admissible, technically adequate, helpful to the jury, and not prejudicial. *U.S. v. Peterson*, 233 F.3d 101, 106 (1st Cir.2000); *U.S. v. Rodriguez*, 43 F.3d 117 (5th Cir.1995). In *Diaz v. U.S.*, 716 A.2d 173 (D.C.1998), the court added that the belated receipt of such evidence should not imbue the evidence with a distorted level of importance in the case. In that case the appellate court found no abuse of discretion where the request to reopen was made after the jury began deliberating and the defendant could have introduced the evidence before deliberations started. *Id.* State courts have proposed a variety of factors to consider, which most often include the party's reason for failing to introduce the evidence in the case in chief; the party's diligence in seeking to introduce the additional evidence; the stage of the proceedings at which the request to reopen is made; the importance of the additional evidence to the case; and the possibility of prejudice, surprise or injustice.[5]

5. Factors used by Virginia courts in making this determination include 1) whether the additional evidence is newly discovered; 2) whether there has been legal error; 3) whether the moving party had ample opportunity to present the evidence in the initial hearing; 4) whether the request to introduce additional evidence was timely; 5) whether the party requested rehearing at the initial hearing; and 6) whether reopening the evidence would cause prejudice, delay, confusion, inconvenience, surprise, or injustice. *Shooltz v. Shooltz*, 27 Va.App. 264, 498 S.E.2d 437 (1998).

The general rule in Maryland is that a plaintiff must put on all of his evidence upon every issue before the defendant may proceed with his evidence. In other words, a plaintiff may not put on half of his case and reserve the remainder. *Wright v. State*, 349 Md. 334, 708 A.2d 316 (1998). That court held that to allow a party to present part of its case while intending to present the rest of it after the opposing party's case would prolong trials and lead to surprise and injustice. *Id.* That court noted that in exercising its discretion to make an exception from the general rule, a trial court should weigh 1) whether the evidence was deliberately withheld to gain an unfair advantage, 2) whether good cause is shown, 3) whether the additional evidence is significant, 4) whether the jury is likely to give the additional evidence undue weight and thereby prejudice the other party, 5) whether the additional evidence is controversial, 6) whether the jury or a party made the request for additional evidence, and 7) whether the additional evidence is cumulative. *Id.*

Factors to be considered by Indiana courts include 1) the potential for prejudice, 2) whether the party seeking to reopen rested inadvertently or on purpose, 3) the stage of the proceedings at

¶ 13 Texas courts weigh the party's diligence in presenting the additional evidence; whether the additional evidence is decisive of the issues; whether reopening will cause undue delay; and whether reopening will cause an injustice. *In re Hawk*, 5 S.W.3d 874, 877 (Tex.App.1999); *Ex Parte Stiles*, 950 S.W.2d 444 (Tex.App.1997); *Word of Faith World Outreach Center Church, Inc. v. Oechsner*, 669 S.W.2d 364 (Tex.App.1984). In *Oechsner*, the case was tried to the bench and the parties stipulated to the case being decided on the appellee's exhibits based on their agreement that there was no dispute of facts. The parties then submitted their trial briefs to the court, which prompted the appellant to seek to reopen the case. The appellant argued that the appellee's brief introduced a fact dispute which affected the appellant's stipulation to the matter being tried on the appellee's exhibits. The trial court denied the request to reopen the case for additional evidence. The Texas Court of Appeals noted that the trial court's discretion should be liberally exercised in the interest of permitting both sides to fully develop the case in the interest of justice. *Id.* The court went so far as to state that the trial court has a duty to reopen the case where the proffered additional evidence is decisive and reception of it would not cause undue delay or do an injustice. The appellate court found that each of the factors had been satisfied and that the

trial court accordingly abused its discretion. *Id.*

¶ 14 Oklahoma courts have found that in making a request to reopen a case for presentation of additional evidence, it is essential that a party make a statement or tender of the additional testimony or evidence. See *McCall v. Duff*, 1963 OK 221, 385 P.2d 916 (After plaintiff rested, defendant moved to dismiss. Plaintiff then sought to reopen its case which was denied. The Oklahoma Supreme Court found no abuse of discretion because the plaintiff failed to indicate what its additional evidence would be.); *White v. City Natl. Bank of Norman*, 1954 OK 44, 271 P.2d 713 (No abuse of discretion found in refusal to reopen where requesting party made no statement as to what additional evidence would have been offered nor any showing of diligence in securing witnesses' attendance.).

¶ 15 Oklahoma courts have further found that after resting, parties may not introduce anything but rebuttal evidence, unless the trial court exercises its discretion to allow in additional evidence in chief, so long as the evidence sought to be introduced is relevant.[6] *Harper–Turner Oil Co. v. Bridge*, 1957 OK 124, 311 P.2d 947. It has also been held, however, that a trial court does not abuse its discretion in refusing to reopen a case where appellate review indicates that the outcome of the trial would have been the same had reopening been allowed. *Miller v.*

---

which the request to reopen was made, and 4) whether reopening would cause confusion or inconvenience. *Green v. Estate of Green*, 724 N.E.2d 260 (Ind.App.2000). In *Polk v. Cao*, 279 Ill.App.3d 101, 215 Ill.Dec. 879, 664 N.E.2d 276 (1996), the appellate court weighed the following factors in reviewing the trial court's decision to deny a request to reopen for the purpose of presenting additional evidence: 1) whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, 2) whether the new evidence would create surprise or prejudice, 3) whether the additional evidence was of the utmost importance to the movant's case, and 4) whether there was any cogent reason for denying the request to reopen. The appellate court determined that the trial court abused its discretion in denying the plaintiff's quest to reopen the case in order to introduce his medical bills which he had failed to introduce out of mistake or inadvertence as to when they could be introduced. The appellate court determined that there was no surprise or prejudice,

particularly considering that the plaintiff asked to reopen before the defendant had begun presenting its case. *Id.*

Nebraska courts consider the reason for the failure to introduce the evidence during the case in chief; the admissibility and materiality of the additional evidence; the movant's diligence in attempting to introduce the evidence before it rested; the stage of the proceedings at which the request to reopen was made; and whether unfair surprise or prejudice is likely. *Jessen v. DeFord*, 3 Neb.App. 940, 536 N.W.2d 68 (1995).

6. Rebuttal evidence is "that evidence which has become relevant only as an effect of some evidence introduced by the other side." *Aggressive Carriers, Inc. v. Tri–State Motor Transit Co.*, 1997 OK CIV APP 31, 941 P.2d 1011, 1013, citing *Poppy v. Duggan*, 1925 OK ——, 109 Okla. 104, 235 P. 165. *Aggressive Carriers* held that the parties have a duty to present all of their evidence before resting. *Id.*

*Hickman*, 1961 OK 16, 359 P.2d 172. Also bearing on our analysis is the parties' constitutional right to be heard. When the trial court's exercise of its discretion results in a denial of a constitutional or statutory right, reversible error is found. *Crussel v. Kirk*, 1995 OK 41, 894 P.2d 1116, 1122. The right to be heard is a constitutional right protected by Art. II, § 7 of the Oklahoma Constitution. A party's right to be heard is an essential component of due process. *Id.*

¶ 16 We are guided in our review of this case by opinions addressing the trial court's exercise of its discretion in entering a default judgment in similar circumstances. In cases in which a default judgment has been entered as a result of counsel's late arrival to court, counsel's actions have been addressed in terms of excusable neglect or misunderstandings on the part of counsel or *pro se* parties. See *Railway Exp. Agency, Inc. v. Jansen*, 1960 OK 117, 351 P.2d 1071, 1076 (abuse of discretion to refuse to vacate default judgment where the answer presented a good defense, defendant made a reasonable excuse for his absence at the time of trial, with no negligence on the defendant's part, and where sustaining motion to vacate would not cause substantial prejudice); *Illinois Elec. Porcelain Co. v. B & M Const. Corp.*, 1941 OK 278, 189 Okla. 336, 117 P.2d 106 (not an abuse of discretion to vacate default judgment where defendant prepared an answer but failed to file it through inadvertence and mistake); *First National Bank v. Kerr*, 1933 OK 433, 165 Okla. 16, 24 P.2d 985, 986 (where petition stated cause of action and plaintiff showed reasonable excuse for its and attorneys' absence at trial, based on honest misunderstanding of the court's

intentions, denial of a timely motion to vacate the default judgment was an abuse of discretion). Default judgments are not favored and public policy encourages actions being tried on the merits. *Nelson v. Nelson*, 1998 OK 10, 954 P.2d 1219, 1228. Cases involving the refusal to vacate a default judgment under circumstances similar to the instant case are informative because in both instances, the parties are in the courtroom ready to proceed, but they are denied that right based on counsel's misunderstanding.[7] Notably absent in such cases are prejudice or unfair surprise to the opposing party and undue delay.

¶ 17 In weighing the facts of the instant case in light of the factors used in other states as noted above, we are persuaded that the trial court in the instant case abused its discretion in denying Employer's request to reopen its case to present evidence in support of its counterclaim. This is particularly so where the parties are present in the courtroom, the witnesses are available in the hallway, closing arguments have not begun, nor has the court announced its decision, or indeed even retired to make its decision. The record reveals Employer acted diligently in listing his witnesses in the pretrial conference order, indicating their testimony and having the witnesses present on the day of trial.[8] But for counsel's misunderstanding that the trial court wanted to hear closing arguments in Branch's case before hearing Employer's case in the counterclaim, and therefore prematurely announcing it rested, Employer would have presented its case and this court might not be faced with an appeal. As we have noted, counsel's mistake caused no prejudice, surprise or delay. Further, Employer's counsel's explanation for its mis-

---

7. Considerations involved in review of the exercise of discretion on motions to vacate default judgments include: 1) default judgments are not favored; 2) default judgments are distinguishable from cases where parties have had the opportunity to be heard on the merits; 3) judicial discretion should be exercised so as to promote the ends of justice; 4) a stronger showing of abuse of discretion is required where a default judgment has been vacated than in cases where vacation was denied; 5) the potential for substantial hardship resulting from the decision whether to vacate. *Ferguson Enterprises, Inc. v. H. Webb Enterprises, Inc.*, 2000 OK 78, 13 P.3d 480, citing *Midkiff v. Luckey*, 1966 OK 49, 412 P.2d 175;

*Burroughs v. Bob Martin Corp.*, 1975 OK 80, 536 P.2d 339; *Hamburger v. Fry*, 1958 OK 287, 338 P.2d 1088; *Latson v. Eaton*, 1957 OK 105, 311 P.2d 231.

8. The parties identified their witnesses to the trial court before trial commenced and a copy of all of Employer's exhibits was delivered to the trial court before trial began. This is a sufficient offer of proof of the substance of the additional evidence under the circumstances of this case where a party was prevented from presenting any evidence in support of its counterclaim.

take was reasonable. Considering that Employer had failed to present any evidence in support of its counterclaim at the time it rested, Employer's additional evidence was in all likelihood significant, decisive, and not cumulative, and the denial of Employer's right to be heard under these facts likely caused an injustice. There can be no dispute that Employer's quest to reopen, made before closing arguments began, was timely. Finally we note that the instant action was tried to the bench and it has been held that greater liberty should be afforded in reopening a bench trial. *Dunahee v. Chenoa Welding & Fabrication, Inc.*, 273 Ill.App.3d 201, 209 Ill.Dec. 898, 652 N.E.2d 438 (1995). The record reveals no reasonable basis for the trial court's decision in light of the circumstances. Based on our finding of abuse of discretion, we reverse and remand with instructions to allow Employer to present its evidence in support of its counterclaim.

¶ 18 Employer's second assertion of error is that the trial court erred in rejecting its proposed findings of fact and conclusions of law. In essence, Employer reasserts its first argument, alleging that the trial court abused its discretion in finding that Employer had failed to meet its burden on proof on the counterclaim after denying Employer the opportunity to reopen its case to present its evidence on the counterclaim. Our decision to reverse and remand makes the issue of the trial court's findings on the counterclaim moot.

¶ 19 Employer's final assertion of error is that the trial court erred in awarding $600 as liquidated damages based on Employer's failure to pay Branch the commission for placing Bob Simpson. Liquidated damages may be ordered where wages have been withheld absent a good faith dispute over the amount of the wages owed. 40 O.S.1991 §§ 165.3(B) and 165.4. Employer asserts that although it stipulated at trial to the $600 commission for the placement of Simpson, the evidence also established a bona fide disagreement as to the commission due for Simpson. Employer also asserts that the trial court erred in its findings that Em-

ployer breached the employment contract in failing to pay the commissions for Jody Potter and Joshua Vaccha. Employer has failed to present any authority in support of this contention of error and it is accordingly waived. *Hall v. Edge*, 1989 OK 143, 782 P.2d 122, 126 n. 1; Sup.Ct. Rule 1.11(k)(1), 12 O.S.Supp.1997, Ch. 15, App.

¶ 20 In his counter-appeal, Branch asserts as error the trial court's decision on prevailing party attorney fees. In the journal entry of judgment, the trial court held that Branch was the prevailing party on the wage claim and was therefore entitled to attorney fees under 40 O.S.1991 § 165.9. The trial court further granted judgment in favor of Branch on Employer's counterclaim and reserved the issue of attorney fees on the counterclaim. In its order on interest and attorney fees entered October 14, 1999, the trial court held that Branch was not entitled to attorney fees on the counterclaim because the trial court did not find bad faith on the part of Employer in asserting the counterclaim. The trial court found that Branch was entitled to 13.1 hours for attorney fees accrued before the counterclaim was filed. The trial court then divided the billed hours claimed by Branch into those spent on the wage claim and those spent on the counterclaim. The trial court found that Branch spent 38.7 hours on the wage claim, plus 11.5 hours devoted to post-trial motions and to the attorney fee hearing. The trial court disallowed 219.7 hours spent defending the counterclaim. The trial court awarded Branch 63.3 hours at $125 per hour, plus costs and pre-judgment interest.[9] On appeal, Branch argues that the trial court erred in refusing to award additional attorney fees for defending the counterclaim. We note that Employer has failed to file an answer brief in response to Branch's counter-appeal brief-in-chief. Ordinarily, where an issue is submitted on the appellant's brief only, we are under no duty to search the record for a theory on which to sustain the trial court's judgment if appellant's brief is reasonably supportive of the allegations of error. If the appellant's brief is not so supportive, the trial

9. Employer did not argue in its brief that the award of attorney fees for the wage claim was

error. Therefore, this part of the judgment is affirmed.

court's judgment will be affirmed. *Bob Moore Cadillac, Inc. v. Proctor*, 1999 OK CIV APP 12, 975 P.2d 918, 920. However, because we remand for trial on the counterclaim, we do not decide this issue because the ultimate determination of prevailing party status on the counterclaim is uncertain at this juncture. We express no opinion on whether the counterclaim asserts claims which support an award of attorneys fees.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

HANSEN, C.J., and GARRETT, J., concur.