WILLIAMS v. MEEKER NORTH DAWSON NURSING LLC



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WILLIAMS v. MEEKER NORTH DAWSON NURSING LLC

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WILLIAMS v. MEEKER NORTH DAWSON NURSING LLC
2019 OK 80
Case Number: 115360
Decided: 12/17/2019
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2019 OK 80, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

RYAN WILLIAMS, individually, and as Personal Representative of the Estate of Lorri Williams Plaintiff/Appellant,
v.
MEEKER NORTH DAWSON NURSING, LLC, d/b/a Meeker Nursing Center, Defendant/Appellee.

APPEAL FROM DISTRICT COURT OF LINCOLN COUNTY

Honorable Cindy F. Ashwood

¶0 The estate of an individual that died as a result of an injury incurred while being a patient of a nursing home sued the nursing home facility in a wrongful death action. The District Court entered default judgment for Plaintiff after Defendant failed to file a response or appear in court multiple times. Over 200 days later, Defendant filed a petition to vacate default judgment and the petition was granted. Plaintiff appealed the ruling, and the Court of Civil Appeals (COCA), Division II, affirmed the trial court's decision. Plaintiff then filed a Petition for Certiorari to this Court and we retained the appeal.

COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT JUDGMENT 
REVERSED IN PART AND REMANDED FOR TRIAL ON DAMAGES.

ATTORNEYS and LAW FIRMS

Deligans, R. Ryan (Bar # 19793), Gerald E. Durbin II (Bar # 2552), Lane R. Neal (Bar # 22246), DURBIN, LARIMORE & BIALICK, 920 North Harvey, Oklahoma City, OK 73102, for Plaintiff/Appellant

Craig L. Box (Bar # 10212), P.O. Box 1549, Enid, OK 73702, for Defendant/Appellee

Michael E. Smith (Bar # 8391), Money, Eric (Bar # 22654), GUNGOLL & JACKSON, 101 Park Ave Suite 1400, Oklahoma City, OK 73102, for Defendant/Appellee

COLBERT, J.

¶1 This is an interlocutory appeal arising from a wrongful death action over the decision to vacate a default judgment. Plaintiff/Appellant, Ryan Williams, individually and as Personal Representative of the Estate of Lorri Williams (Williams), appeals from the decision below to grant a Petition to Vacate Judgment of default judgments placed against Defendant/Appellee, Meeker North Dawson Nursing, LLC (Meeker). Both lower courts agreed with Meeker's contentions that Meeker correctly filed the Petition to Vacate Judgment, never had "actual knowledge" of the litigation that led to the default judgment, and that the damages awarded after the default judgment were in excess of damages allowed by statute.[1] Williams contends that the Petition to Vacate Judgment should be denied, as Meeker failed to provide evidence of an unavoidable casualty or misfortune as required by statute to justify the vacation of a default judgment under Okla. Stat. tit. 12, § 1031.[2] Having retained the appeal, this Court now considers the validity of the decision to vacate the default judgment by examining the trial court proceedings below. The COCA opinion is vacated, and the trial court's opinion is reversed in part and remanded for further proceedings.

I. BACKGROUND

¶2 Williams is the son of Lorri Williams (Decedent). Prior to her death, Decedent was an elderly and disabled patient at the Meeker Nursing Center. The Meeker Nursing Center is located in Meeker, Oklahoma, and is operated by Meeker North Dawson Nursing, LLC, an entity domiciled in the State of Georgia. Meeker Nursing Center is the principal place of business of Meeker North Dawson Nursing, LLC. Meeker's registered agent, the Corporation Company, is listed with the Oklahoma Secretary of State.

¶3 On November 1, 2013, while under the care of Meeker, Decedent was wheeled outside of the nursing facility for fresh air by a Meeker employee and left unattended. Meeker's employees failed to check on or retrieve her from outside. Decedent, blind and wheelchair bound, got cold and tried to push herself back inside the center. In doing so, she fell out of her wheelchair onto the concrete and was injured. Eventually, an individual passing by in a vehicle saw Decedent lying on the ground, got out of his vehicle, and helped her into her chair and back into the facility, at which point she was transported by ambulance to the hospital.

¶4 Following the incident, Decedent allegedly began to have health issues relating to a leg injury that resulted from the incident, including her leg becoming infected and developing sepsis, which eventually caused Decedent's organs to shut down, thereby causing her death on March 9, 2015. Prior to Decedent's death and the commencement of this lawsuit, Decedent's former counsel sent a letter directly to the Meeker Nursing Center in September of 2014, communicating the intent to file a suit for the negligent care received by Decedent, asking Meeker to contact their insurance company, and requesting a response from Meeker. Neither Decedent nor her attorney received a response from Meeker.

¶5 On October 27, 2015, following the death of Decedent, Williams filed suit in Lincoln County against Meeker, claiming that Decedent suffered an injury to her left leg while under the care of Meeker in November 2013. Williams alleged that this injury ultimately led, in part, to Decedent's death. Williams contended that Meeker violated the Federal Omnibus Budget Reconciliation Act of 1987, the Oklahoma Nursing Home Care Act, Okla. Stat. tit. 63, §§ 1-1901 et seq., and 48 C.F.R. § 3. Williams finally alleged that Meeker was negligent in its care of Decedent, and that Meeker was negligent in the hiring, training, and supervision of its employees. Williams served the Petition and Summons on Meeker's registered agent, the Corporation Company,[3] on November 3, 2015, by certified mail in accordance with service of process on an Oklahoma corporation. Okla. Stat. tit. 12, § 2004(C)(1)(c)(3).[4]

¶6 After Meeker failed to respond to the Petition and Summons, Williams filed a motion for default judgment on December 21, 2015. The trial judge denied the motion, ordering Williams to serve Meeker again. On January 5, 2016, Williams hired a process server who successfully served Meeker's registered agent by delivering a copy of the Summons, Petition, and Entry of Appearance to the registered agent at the Corporation Company. After failing a second time to make an appearance or file a response to service of process, on January 26, 2016, the trial court granted Williams' second motion for default judgment.

¶7 On January 28, 2016, following an order for default judgment, Williams next proceeded to file for a hearing on damages. Williams properly served Meeker by certified mail to Meeker's registered agent, the Corporation Company, but again received no response from Meeker or their registered agent. On March 9, 2016, the hearing on damages was held, where Meeker failed to appear, although being properly served. The trial court allowed Williams to present evidence of both the Proof of Service and damages. The trial court awarded Williams damages in the amount of $3,020,055.42.

¶8 In total, Meeker failed to respond to Decedent's former attorney's notification of imminent lawsuit while Decedent was still living in September 2014, the initial Petition and Summons from Williams on November 3, 2015, the second service of process from Williams on January 5, 2016, the service of process for the hearing on damages on January 28, 2016, and finally did not appear at the hearing on damages on March 9, 2016.

¶9 On June 30, 2016, the trial court issued an Order to Appear and Answer as to Assets and Forbidding Transfer or Other Disposition of Property to the Defendant. Williams served a copy of the Order to Appear to multiple addresses of Meeker between July 8, 2016, and July 11, 2016. An attorney for Meeker finally responded by personal email on July 13, 2016, 253 days after the initial service of process, asking for a copy of the Petition. On August 2, 2016, 280 days after the initial service of process, the attorney for Meeker filed an Entry of Appearance and Verified Petition to Vacate Judgment and for Temporary Restraining Order and Temporary Injunction. On August 17, 2016, the trial court granted Meeker's Petition to Vacate Judgment over Williams's objection. Thereafter, Williams appealed. The COCA affirmed the trial court's ruling on July 14, 2017. Plaintiff then filed a Petition for Certiorari, which was granted by this Court on November 6, 2017.

II. STANDARD OF REVIEW

¶10 A trial court's decision to vacate a judgment is reviewed for abuse of discretion. Ferguson Enters., Inc. v. H. Webb Enters., Inc., 2000 OK 78, ¶ 5, 13 P.3d 480, 482. An abuse of discretion occurs "when the decision is based on an erroneous interpretation of the law, on factual findings that are unsupported by proof, or represents an unreasonable judgment in weighing relevant factors." Okla. City Zoological Tr. v. State ex rel. Pub. Emps. Relations Bd., 2007 OK 21, ¶ 5, 158 P.3d 461, 464. An order vacating a default judgment will not be disturbed on appeal unless it clearly appears that the trial court has abused its sound legal discretion. Midkiff v. Luckey, 1966 OK 49, ¶ 6, 412 P.2d 175, 176 (quoting State Life Ins. Co. v. Liddell et al., 1936 OK 662, ¶ 14 61 P.2d 1075, 1078). A much stronger showing of abuse of discretion must be made where a judgment has been set aside than where it has been refused. Id.

III. DISCUSSION

A. Petition to Vacate Judgment

¶11 Title 12 of the Oklahoma Statutes clearly specifies the procedure for a trial court to vacate or modify judgments. If more than thirty (30) days have passed since the filing of a judgment, proceedings to vacate or modify a judgment must be done in conformance with Okla. Stat. tit. 12, § 1033,[5] unless all parties approve the proceedings. See, Okla. Stat. tit. 12, § 1031.1. Under § 1033, proceedings to vacate judgments pursuant to situations listed in § 1031 must be made by verified petition, setting forth a defense to the action, and served with duly issued summons. Meeker's Petition to Vacate Judgment adheres to the statutory provisions provided by § 1033.

B. Vacation of Judgment

¶12 This Court has consistently viewed default judgments with disfavor, preferring, "whenever possible, that litigating parties be allowed their day in court so that a decision on the merits may be reached." Feely v. Davis, 1989 OK 163, ¶ 16, 784 P.2d 1066, 1070. However, this general disfavor of default judgments does not eliminate default judgments altogether, as a party petitioning for a vacation of judgment must prove more than just a general disfavor of default judgments. By statute, default judgments may be vacated or modified in nine circumstances, as listed in Okla. Stat. tit. 12, § 1031. To vacate a default judgment, the petitioning party must present evidence to prove the elements of the § 1031 subsection, rather than testifying to the merits of the case itself. In the Petition to Vacate Judgment, Meeker claimed only two of the nine circumstances. In support of the Petition to Vacate Judgment, Meeker presented testimony of a registered nurse and Meeker's in-house counsel. After hearing the witnesses, the trial court granted Meeker's Petition to Vacate Judgment.

¶13 Meeker claimed two subsections of § 1031 applied when addressing Plaintiff's lawsuit: § 1031(2) Defendant had no actual notice of the pendency of the action at the time of the filing of the judgment or order, and § 1031(7) that there was some unavoidable casualty or misfortune which prevented Meeker from defending the action. Okla. Stat. tit. 12, §§ 1031(2),(7). Meeker presented testimony from Barnett, a nurse for Meeker, and Scates, Meeker's in-house counsel. Barnett did not testify to either notice of the lawsuit or the unavoidable casualty or misfortune, but rather testified regarding damages relating to the merits of the case. While Barnett's testimony may show there to be some defense as to the merits of the case, her testimony established no grounds to vacate or modify the judgment. Instead, Barnett focused on hearsay statements as to how the incident occurred in the eyes of Meeker. Meeker presented Barnett as a witness, despite Barnett never having treated Williams at any point after the incident, to testify to the merits of the case as to whether or not Williams ever suffered an injury. Since Barnett's testimony provided no evidence of actual notice or unavoidable casualty or misfortune, the testimony is irrelevant and should not be considered in a decision as to whether the trial court should vacate the default judgments.

¶14 The district court erred by allowing Barnett to testify to facts surrounding anything other than notice of the litigation or casualties or misfortunes that surrounded the litigation. The trial court abused its discretion by vacating the default judgments against Meeker based on evidence concerning the merits of the case, rather than whether or not § 1031 gave the trial court a valid reason to grant the Petition to Vacate Judgment.

i. Actual Notice

¶15 The testimony presented by attorney Scates attempted to address the two rationales Meeker claimed under § 1031--actual notice and unavoidable casualty or misfortune. Scates testified that Meeker never received "actual notice" of the lawsuit, and that this lack of actual knowledge was the unavoidable casualty or misfortune, thereby requiring the court to vacate the default judgment. Scates explained Meeker's process for receiving notice for lawsuits, and then stated that there was no record that Meeker received any of the three instances of proper service. Scates further acknowledged that the Corporation Company is Meeker's registered agent; however, despite stating that Meeker had no record of proper service, Scates admitted that the Registered Agent did indeed receive proper service. Scates claimed there had been a breakdown in communications between Meeker and its agent, so there was never "actual notice."

¶16 Scates then described the procedure for receiving notice of legal actions from the Corporation Company, and identified Meeker's employee, Kathryn Branigan, who was responsible for receiving such notice. Scates was unable to pinpoint where or how a lapse in communication occurred; asserting that Meeker would never have ignored the service of process and would have answered and defended the lawsuit if it had "actual notice." Branigan, despite being the point of contact between Meeker and the Corporation Company, was unavailable for the hearing, as she was too busy to assist Meeker by testifying in a case with a $3,000,000 default judgment in place. Scates testified that Branigan was prevented from testifying because of, "[h]er job. She's responsible for a myriad of - - I mean, there's nothing that she would testify to that I couldn't testify to - - in regards to this matter."

¶17 Proper service of process can be made to an authorized registered agent of a foreign or domestic corporation or partnership. Okla. Stat. tit. 12, § 2004. To ensure the service of process upon the registered agent was completed before filing a default judgment for failure to respond to the first service of process, the trial court ordered Williams to re-serve Meeker's registered agent. Williams complied with this request, sending a process server to the Corporation Company to serve process on Meeker's registered agent. Williams also filed the Return of Service to Meeker with a stamped green card, showing that the service of process on Meeker was successfully completed as required under § 2004. By making the Corporation Company the registered agent, Meeker authorized the Corporation Company to act as an agent of the company for the specific purpose of receiving service of process.

¶18 While testifying, Scates admitted that the Corporation Company received the service of process from Williams. This admission alone displays that Meeker had actual notice of the litigation, since notice to an agent imputes the agent's actual knowledge to the principal. Restatement (Third) of Agency §§ 5.01-.03 (2006). "A notification given to an agent is effective as notice to the principal if the agent has actual or apparent authority to receive the notification, unless the person who gives the notification knows or has reason to know that the agent is acting adversely to the principal as stated in § 5.04." Restatement (Third) of Agency § 5.02(1) (2006). There is no reason to believe, and it is not asserted, that the Corporation Company was acting adversely to Meeker. Therefore, the actual notice of proper service of process given to the Corporation Company is imputed to Meeker, and thereby effective as actual notice.

¶19 Under Oklahoma case law, "corporate directors and officers are presumed to know that which it is their duty to know and about which they have the means of knowing . . . . Or to state it another way the officials are bound to know what they ought to know and would have known by proper attention to their business. Bank of Okla., N.A. v. Krown Sys., 2002 OK CIV APP 82, ¶12, 53 P.3d 924, 927 (quoting Preston-Thomas Constr., Inc. v. Cent. Leasing Corp., 1973 OK CIV APP 10, ¶ 8, 518 P.2d 1125, 1127). Any claim made by Meeker that Williams should have sent service of process directly to Meeker's operating address is flawed for two reasons: first, because Oklahoma doesn't require this type of service under Okla. Stat. tit. 12, § 2004, and second, because Meeker was made aware of imminent litigation at Meeker's operating address when Decedent's former attorney sent the September 2014 letter directly to Meeker's operating address. Meeker was made more than aware of Decedent's intent to file a lawsuit before her death, but Meeker decided not to respond. Even after a lawsuit was filed following Decedent's death, Meeker still failed to respond. Meeker's claim of a lack of actual knowledge is legally and factually preposterous, as it is their duty to give proper attention to their business, including litigation served on their registered agent.

¶20 Meeker's claimed lack of actual notice, even though its registered agent received notice of pending action, is incorrect. Meeker blurs the legal definition of actual notice and the layman's definition of actual notice. There is no question that Meeker's registered agent received actual notice of the litigation in the form of service of process, as attorney Scates testified as to the fact. Further, there is no question that knowledge of the agent is imputed onto the principal. Am. Bank of Commerce v. Chavis, 1982 OK 66, ¶ 11, 651 P.2d 1321, 1323-24; Restatement (Third) of Agency § 5.03 (2006). Therefore, Meeker had actual knowledge of the suit. This Court will not allow corporations or other entities operating in Oklahoma to take advantage of Oklahoma citizens by allowing them to avoid litigation by claiming lack of actual notice when their registered agents have been properly served as required by Oklahoma law. Since Meeker had actual knowledge of the lawsuit, as imputed to them through their registered agent, the trial court's finding of lack of actual notice under Okla. Stat. tit.12, § 1031(2) is without merit.

ii. Unavoidable Casualty or Misfortune

¶21 Meeker alleges that the breakdown in communication between Meeker and its registered agent constituted an "unavoidable casualty or misfortune" that resulted in Meeker's lack of actual notice of the action. Meeker's in-house counsel testified that this breakdown in communication was the only reason that Defendant made no defense to Plaintiff's filings and did not make a timely entry of appearance. Despite this claim, Meeker's complaint of a breakdown in communications with its registered agent does not amount to an unavoidable casualty or misfortune. If this Court accepted Meeker's argument, the most egregious result for Williams and all Oklahoma litigants would occur, because the argument forces Williams to be penalized for Meeker's lack of diligence and Meeker's failure to communicate with its own agent.

¶22 This Court has stated that to be categorized as an unavoidable casualty or misfortune, the circumstance must be an event "which human prudence, foresight, and sagacity, could not prevent, such as sickness and death, miscarriage of the mails, mistake in working of a telegram, etc." Chavis, 1982 OK 66, ¶ 13, 651 P.2d at 1324 (quoting Wagner v. Lucas, 1920 OK 315, ¶ 5, 193 P. 421, 423). In Chavis, the defendant delivered the petition and summons to an attorney that agreed to represent the defendant, who marked the pleadings as "calendared," but were not placed on the docket book of the firm. After the attorney was made aware that the answer date had passed, the attorney called the deputy court clerk, who erroneously stated that no action to take judgment had been initiated, while the plaintiff had in fact obtained a default judgment three days earlier.

¶23 After a Petition to Vacate Judgment was granted by the trial court, the Chavis Court held that "the negligence of an attorney while representing his client is imputed to the client and constitutes negligence of the client, and accordingly does not constitute unavoidable casualty and misfortune, justifying the vacation of a judgment." Id. ¶ 9, 651 P.2d at 1323. However, this Court concluded that breakdown in office procedure, when combined with reliance on incorrect information received from a deputy court clerk, created a valid ground for a trial court to grant a Petition to Vacate Judgment.

¶24 When a party has been given multiple opportunities to respond to litigation but fails to respond or appear, the refusal to vacate a default judgment is correct. Ross v. Pace, 2004 OK 13, ¶ 12, 87 P.3d 593, 595. In Ross, the plaintiff's failure to respond to two separate discovery requests, failure to respond to a motion for summary judgment, and failure to appear for the hearing on the summary judgment motion led to the trial court granting summary judgment for the defendant. The plaintiff was later denied a Petition to Vacate Judgment by the trial court, and the COCA reversed. The plaintiff's attorneys stated the failure to respond was caused by a breakdown in office procedure when referring the file to an outside attorney, and all filings were placed in an unmonitored referral file. The plaintiff's attorneys were unaware of the breakdown until summary judgment was granted.

¶25 The Ross Court ruled that the failure to file responses to discovery requests for more than 90 days after the discovery requests were filed was sufficient to show that a trial court should refuse to vacate the default judgment. The Court concluded, saying "[g]iven the number of opportunities [plaintiff's] attorneys were afforded to respond to the requests for admission from [defendant], and the notice of motion for summary judgment and the hearing set in the matter, we do not find this to be a close case." Id. We ruled that multiple failures to respond or appear when properly served process, especially when combined with the negligence of an attorney to respond, is sufficient to show that a petition to vacate judgment should be denied.

¶26 The case law of Oklahoma on "unavoidable casualty or misfortune" is best shown in Coulsen v. Owens, where the COCA held that no unavoidable casualty or misfortune occurred. 2005 OK CIV APP 93, ¶ 28, 125 P.3d 1233, 1240. Plaintiffs in Coulsen obtained a default judgment against defendant for injuries suffered due to a motorcycle accident after defendant's attorney failed to timely file an answer to the plaintiff's petition. Plaintiff was a passenger on a motorcycle operated by defendant when the latter lost control and crashed, ejecting plaintiff, who suffered extensive injuries. Plaintiff served process by certified mail. The court held that the defendant had timely sent the summons and petition to his insurance company which forwarded it to local counsel, who reviewed the petition and "discerned flaws therein," and directed an associate to prepare a motion to dismiss. Local counsel did not timely file either an answer or motion to dismiss, believing that the associate had filed the pleading, while the associate believed local counsel had filed the pleading. To defend this lack of filing, local counsel stated that the office was expanding, but admitted that the expansion was essentially completed before the summons and petition were found lying on his desk.

¶27 After defendant failed to answer or appear in Coulsen, the plaintiffs appeared before the trial court, gave testimony, and were awarded damages against the defendant. Following judgment, Plaintiffs attempted to collect the judgment against defendant's insurance carrier. The insurance company contacted local counsel, who discovered the responsive pleading on his desk. More than three months after the entry of default judgment, local counsel filed a petition to vacate the entry of default judgment, alleging, among other things, that the judgment should be vacated for unavoidable casualty or misfortune. The trial court vacated the default judgment and plaintiffs appealed.

¶28 The COCA held that the trial court had abused its discretion by vacating the default judgment, since the negligence of an attorney, by itself, is not an unavoidable casualty or misfortune. Coulsen also concluded that there were no extenuating circumstances present to show an unavoidable casualty or misfortune, by distinguishing Oklahoma case law from the facts of the case at hand:

There was no reliance on erroneous docket information supplied by a court clerk (Chavis[6]), illness (Tedford[7]), or misdocketing (Heitman[8]). Nor were the parties in the middle of a hearing when the default occurred (Branch[9]). The parties were not proceeding pro se (Nelson[10]) but were each represented by counsel. . . . We further find that, unlike the attorneys in Ross,[11] Defendant did not ignore repeated requests to comply with a deadline. This is simply a case wherein an attorney failed to timely file an answer to a petition. As set out earlier, that alone is not sufficient under Chavis, the case relied on by the trial court, to support a finding of unavoidable casualty.

Id. ¶ 27 (footnotes added). The instant case is synonymous with Ross and Coulsen. Just as in Ross and Coulsen, Meeker was properly served multiple times, and the default judgment was granted solely due to the negligence of the party. Meeker was properly served not only once, but three separate times, and each time wholly failed to respond. The only factor that Meeker can claim as being an unavoidable casualty or misfortune is the negligence of the company and its registered agent, which Coulsen has expressly declared not to be an unavoidable casualty or misfortune.

¶29 Meeker's failure to respond to multiple services of process is far more egregious and arbitrary than that ruled upon by the Ross or Coulsen court. Meeker did not testify or allege illness, misdocketing, confusion over multiple litigation in multiple forums, pro se representation, statutory provisions concerning obscure filing periods, a breakdown in office procedure in combination with misinformation from a deputy court clerk, or a lawyer's misdocketing followed by a motion to vacate filed the next day. Here, the only defense was based on a theory that Meeker would have responded to the lawsuit had they received "actual notice," and that this lack of "actual notice" was the unavoidable casualty or misfortune. This theory is not sufficient to grant the Petition to Vacate Default Judgment, as it is not enough to meet the standard set by Chavis and Ross in analyzing Okla. Stat. tit. 12, § 1031. Further, as stated above, Meeker did indeed receive actual notice, meaning that the trial court's finding of an unavoidable casualty or misfortune is in error.

¶30 This Court will not allow a domestic or foreign Corporation operating in the State of Oklahoma to avoid lawsuits until they are convenient for the Corporation to answer, just because they do not understand the legal definition of "actual notice." Even though Meeker is correct in the vague notion that default judgments are disfavored among courts, when the Corporation Company properly received service of process not only once, but multiple times, the trial court was incorrect in vacating the default judgment against Meeker due to the lack of "actual notice" because of a breakdown in communication between Meeker and its agent, which is an not an unavoidable casualty or misfortune. Because knowledge of an agent is imputed to the principal, the trial court abused its discretion by vacating the default judgment as to liability against Meeker after Meeker provided no evidence of unavoidable casualty or misfortune as required to justify the vacation of default judgment under Okla. Stat. tit. 12, § 1031.

IV. CONCLUSION

¶31 It is patently clear that Meeker's arguments for the Petition to Vacate Judgment as to liability is without merit. Meeker was given a multitude of opportunities to respond to the litigation, but failed to respond to a single instance for 280 days after the initial service of process. Meeker failed to respond to any service of process or appear at any hearing, and did not have an argument with merit to support the inability to respond to the litigation. Accordingly we vacate the opinion of the Court of Civil Appeals, reverse the trial court's judgment granting the Petition To Vacate Judgment as to liability, and remand this matter for a trial on damages.

COURT OF CIVIL APPEALS OPINION VACATED; TRIAL COURT JUDGMENT 
REVERSED IN PART AND REMANDED FOR TRIAL ON DAMAGES.

CONCUR: Gurich, C.J., Darby, V.C.J., Winchester, Edmondson, Colbert and Combs, JJ;

DISSENT: Kane, J.

Kane, J., dissenting

I dissent. I would find that the trial court did not abuse its discretion;

NOT PARTICIPATING: Kauger, J.

FOOTNOTES

[1] 42 C.F.R. § 447.15 and Okla. Stat. tit. 12, § 3009.1.

[2] Okla. Stat. tit. 12, § 1031 reads in the entirety:

The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:
1. By granting a new trial for the cause, within the time and in the manner prescribed in Sections 651 through 655 of this title;
2. As authorized in subsection C of Section 2004 of this title where the defendant had no actual notice of the pendency of the action at the time of the filing of the judgment or order;
3. For mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order;
4. For fraud, practiced by the successful party, in obtaining a judgment or order;
5. For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not appear in the record, nor the error in the proceedings;
6. For the death of one of the parties before the judgment in the action;
7. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending;
8. For errors in a judgment, shown by an infant in twelve (12) months after arriving at full age, as prescribed in Section 700 of this title; or
9. For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment.

(emphasis added).

[3] The Corporation Company provides Registered Agent Services. The Corporation Company is Oklahoma's location for CT Corporation (Corporation Trust Company), a wholly owned subsidiary of Wolters Kluwer.

[4] Okla. Stat. tit. 12, § 2004(C)(1)(c)(3) states:

(3) upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and of the petition to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

[5] Okla. Stat. tit. 12, § 1033 states in the entirety:

If more than thirty (30) days after a judgment, decree, or appealable order has been filed, proceedings to vacate or modify the judgment, decree, or appealable order, on the grounds mentioned in paragraphs 2, 4, 5, 6, 7, 8 and 9 of section 1031 of this title, shall be by petition, verified by affidavit, setting forth the judgment, decree, or appealable order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On this petition, a summons shall issue and be served as in the commencement of a civil action.

[6] Am. Bank of Commerce v. Chavis, 1982 OK 66, 651 P.2d 1321.

[7] Tedford v. Divine, 1987 OK 18, 734 P.2d 283.

[8] Heitman v. Brown, 1996 OK CIV APP 148, 933 P.2d 948.

[9] Branch v. Ameriresource Grp., Inc., 2001 OK CIV APP 86, 29 P.3d 605.

[10] Nelson v. Nelson, 1998 OK 10, 954 P.2d 1219.

[11] Ross v. Pace, 2004 OK 13, 87 P.3d 593.

 






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2001 OK CIV APP 86, 29 P.3d 605, 72 OBJ 2199, BRANCH v. AMERIRESOURCE GROUP, INC.
Discussed
 2002 OK CIV APP 82, 53 P.3d 924, BANK OF OKLAHOMA, N.A. v. KROWN SYSTEMS
Discussed
 1973 OK CIV APP 10, 518 P.2d 1125, PRESTON-THOMAS CONST. v. CENTRAL LEASING
Discussed
 2005 OK CIV APP 93, 125 P.3d 1233, COULSEN v. OWENS
Discussed
 1996 OK CIV APP 148, 933 P.2d 948, 68 OBJ 712, HEITMAN v. BROWN
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 18, 734 P.2d 283, 58 OBJ 568, Tedford v. Divine
Discussed
 1989 OK 163, 784 P.2d 1066, 60 OBJ 3175, Feely v. Davis
Discussed
 1998 OK 10, 954 P.2d 1219, 69 OBJ 452, NELSON v. NELSON
Discussed
 2000 OK 78, 13 P.3d 480, 71 OBJ 2590, FERGUSON ENTERPRISES, INC. v. H. WEBB ENTERPRISES, INC.
Discussed
 1936 OK 662, 61 P.2d 1075, 178 Okla. 114, STATE LIFE INS. CO. v. LIDDELL
Discussed
 1920 OK 315, 193 P. 421, 79 Okla. 231, WAGNER et al. v. LUCAS et al.
Discussed
 1966 OK 49, 412 P.2d 175, MIDKIFF v. LUCKEY
Discussed
 2004 OK 13, 87 P.3d 593, ROSS v. PACE
Discussed at Length
 2007 OK 21, 158 P.3d 461, OKLAHOMA CITY ZOOLOGICAL TRUST v. STATE ex rel. PUBLIC EMPLOYEES RELATIONS BD.
Discussed
 1982 OK 66, 651 P.2d 1321, American Bank of Commerce v. Chavis
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA